# EXHIBIT A

**ORIGINAL**

CM-010

BY FAX

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| William M. Audet, Esq. (Bar No. 117456)<br>Joshua C. Ezrin, Esq. (Bar No. 220157)<br>Audet & Partners, LLP<br>221 Main Street, Suite 1460, San Francisco, CA 94105.<br>TELEPHONE NO.: (415) 568-2555   FAX NO.: (415) 568-2556<br>ATTORNEY FOR *(Name):* Roberson, et al. | **FILED**<br>SUPERIOR COURT<br>COUNTY OF SAN FRANCISCO<br><br>**2013 AUG 13  PM 4: 04**<br><br>CLERK OF THE COURT<br>BY:<br>DEPUTY CLERK<br><br>**MARY ANN MORAN** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4515
BRANCH NAME: Unlimited Civil Division

CASE NAME:
Roberson, et al. v. Bristol-Myers Squibb Company, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>CGC 13-533539 |
|---|---|---|
| ☑ Unlimited  ☐ Limited<br>(Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☑ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☑ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* Twelve
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 13, 2013
Joshua C. Ezrin
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

ORIGINAL

1

2  William M. Audet (CA State Bar #117456)
   waudet@audetlaw.com
3  Joshua C. Ezrin (CA State Bar #220157)
   jezrin@audetlaw.com
4  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
5  San Francisco CA 94105
   Telephone: (415) 568-2555
6  Facsimile: (415) 568-2556

7  MICHAEL MILLER, ESQ.
   JEFFREY A. TRAVERS, ESQ.
8  THE MILLER FIRM, LLC
   108 Railroad Avenue
9  Orange, VA 22960
   Telephone: 540-672-4224

10 Attorneys for Plaintiffs

**F I L E D**
Superior Court of California
County of San Francisco

AUG 13 2013

**CLERK OF THE COURT**
BY: _Mary Ann Moran_
                    Deputy Clerk

Summons
Issued

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              IN AND FOR THE COUNTY OF SAN FRANCISCO

13

14 | LEON ROBERSON, EDITH DOBERSTEIN, | Case No. **CGC  13-533539**
15 | IRVING EPSTEIN, KIM B. LOPEZ, |
   | ROBERT C. LOUGH, RUTH LOYD, | **COMPLAINT FOR DAMAGES AND**
16 | ELEANOR MALAM, JAMES MARTIN, | **DEMAND FOR JURY TRIAL**
   | JAMIE MATTILA, individually, and as |
17 | successor-in-interest on behalf of the Estate of | 1. Strict Products Liability
   | MARGARET BARTNICKI, MAUREEN A. | 2. Strict Liability – Manufacturing
18 | MCCOY, IMOGENE MCCURLEY, ANN |    Defect
   | MCGOVERN, MAGGIE BREWER, | 3. Negligence
19 | MICHAEL MILLER, JESSE MOORE, | 4. Breach of Implied Warranty
   | individually, and as successor-in-interest on | 5. Breach of Express Warranty
20 | behalf of the Estate of POLLY MOORE, | 6. Deceit by Concealment – Ca. Civ.
   | FARNK MORMUR, KENNETH MORRILL, |    Code §§ 1709, 1710
21 | MARY C. MOXLEY, VALMORE NADIN, | 7. Negligent Misrepresentation
   | WALTER NAGORSKI, ALEX NAHORNEY, | 8. Fraud by Concealment
22 | CAROL A. NEBEL, WILLIAM NEWMAN, | 9. Violation of Cal. Bus. & Prof. Code
   | MARY NIET, individually, and as successor- |    § 17200
23 | in-interest on behalf of the Estate of FRANK | 10. Violation of Cal. Bus. & Prof. Code
   | NIET, LARRY NOBLE, LINDA NOELL, |    § 17500
24 | JOHN NORMAN, HAROLD OAKS, | 11. Violation of Cal. Civ. Code § 1750
   | REBECCA PAYNE, HANS J. PFEIFFER, | 12. Wrongful Death
25 | AUDREY PUGH, individually, and as |
   | successor-in-interest on behalf of the Estate of |
26 | ROBBIE LEE PUGH, JUDITH RANDALL, |
   | NEIL REDDINGTON, DAVID RIPPER, |
27 | JUNE MILLER RUBY, individually, and as |
   | successor-in-interest on behalf of the Estate of |
28 | HELEN MILLER, SAM SALUZZI, ROGER |

1
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

BY FAX

SCHULSTAD, JOHN SCHWEGMAN, NATHANIEL, RUTH SEEBER, GEORGE A. SELLERY, FRANK SHABAZIAN, SHERWIN SILVERMAN, ALMAJEANE SMITH, BARBARA SMITH, DALE SNOW, MARLYN STREET, RONALD F. SWANSON, DIANA TAYLOR, individually, and as successor-in-interest on behalf of the Estate of DON SMART, WILMA J. TAYLOR, PEGGY A. TETEN, ANNETTE THOMAS, ELIZABETH TOMPKINS, individually, and as successor-in-interest on behalf of the Estate of DOUGLAS SMITH, LEROY TURCHIN, RENE VILLARREAL, JIMMY WALKER, EDWARD WALLER, individually, and as successor-in-interest on behalf of the Estate of MARY WALLER, CONNIE WAPP, individually, and as successor-in-interest on behalf of the Estate of WILLIAM WHITESELL.

Plaintiffs,

vs.

BRISTOL-MYERS SQUIBB COMPANY, SANOFI-AVENTIS U.S. LLC., SANOFI-AVENTIS U.S., INC., SANOFI-SYNTHELABO, INC., MCKESSON CORPORATION, and DOES 1 to 100,

Defendants.

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    COME NOW Plaintiffs, and each of them, and complain and allege against Defendants,
2    Does 1 through 75, and each of them as follows:

3    **GENERAL ALLEGATIONS**

4    1.    This action involve claims of death, personal injury, economic damages, punitive
5    damages, and other claims of damage arising from the use of Plavix, a pharmaceutical
6    compound researched, designed, formulated, compounded, tested, manufactured, produced,
7    processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised
8    for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendants
9    BRISTOL-MYERS SQUIBB COMPANY ("BMS"); SANOFI-AVENTIS U.S. LLC.; SANOFI-
10   AVENTIS U.S., INC.; and/or SANOFI-SYNTHELABO, INC. ("SANOFI") and marketed, sold,
11   and distributed by Defendant MCKESSON CORPORATION ("McKesson") and is brought on
12   behalf of the named plaintiffs, collectively referred to herein as "Plaintiffs". This action seeks,
13   among other relief, general and special damages and equitable relief in order to enable the living
14   Plaintiffs who ingested Plavix to treat and monitor the dangerous, severe and life threatening
15   side effects caused by this drug, including but not limited to gastrointestinal bleeding, bleeding
16   ulcers, TTP, and other injuries.

17   2.    The true names or capacities whether individual, corporate or otherwise, of
18   Defendants Does 1 through 75, inclusive, are unknown to Plaintiffs who therefore, pursuant to
19   *California Code of Civil Procedure* §474, sue said Defendants by such fictitious names.
20   Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names is
21   in some manner legally responsible for the events and happenings herein referred to and caused
22   damages proximately and foreseeably to Plaintiffs as alleged herein.

23   3.    At all times herein mentioned, each of the Defendants was the agent, servant,
24   partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants
25   herein and were at all times operating and acting within the purpose and scope of said agency,
26   service, employment, partnership, conspiracy and joint venture and rendered substantial
27   assistance and encouragement to the other Defendants, knowing that their conduct constituted a
28   breach of duty.

4.      There exists, and at all times herein mentioned, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendant, and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as any entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

5.      The injuries and damages to Plaintiffs were caused by the wrongful acts, omissions, and fraudulent representations of Defendants, many of which occurred within the State of California.

6.      At all times herein mentioned, Defendants were each engaged in the business of, or were successors in interest to, entities engaged in the business of research, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the drug Plavix.

7.      At all times herein mentioned, Defendants were each authorized to do business within the State of California and did in fact supply the aforementioned products within the State of California.

8.      At all times herein mentioned, the officers and directors of Defendants authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

## JURISDICTION AND VENUE

9.      Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,

1 | and each of them, were and are authorized to do and are doing business in the State of
2 | California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and
3 | each of them, were and are authorized to do and are doing business in the State of California,
4 | and that said Defendants have regularly conducted business in the County of San Francisco,
5 | State of California.

6      10.    Venue is proper in this county because at least one Defendant, McKesson
7 | Corporation, has its principal place of business in the County of San Francisco, State of
8 | California.

9      11.    Defendants and all Plaintiffs herein entered into a tolling agreement beginning on
10 | March 13, 2007, wherein new Plaintiffs were added each month thereafter by written notice to
11 | Defendants, and continuing until sixty (60) days after notice of termination. The tolling
12 | agreement in exchange for the Plaintiffs forbearance of filing lawsuits tolled the statute of
13 | limitations against all Plaintiffs until written notice was given that the tolling agreement was to
14 | be terminated. Thus the entire period of tolling is excluded from any statute of limitations
15 | calculation.

16

## PLAINTIFFS

17      12.    Plaintiff LEON ROBERSON is a natural person currently residing in California.
18 | Plaintiff ROBERSON was prescribed and ingested Plavix thereafter suffering severe physical,
19 | economic and emotional injuries as a result of said Plavix, including but not limited to
20 | gastrointestinal bleeding. Plaintiff ROBERSON was unaware that his injuries were caused by
21 | Defendants until within two years of filing this complaint.

22      13.    Plaintiff EDITH DOBERSTEIN is a natural person currently residing in New
23 | jersey. Plaintiff DOBERSTEIN was prescribed and ingested Plavix thereafter suffering severe
24 | physical, economic and emotional injuries as a result of said Plavix, including but not limited to
25 | gastrointestinal bleeding. Plaintiff DOBERSTEIN was unaware that her injuries were caused by
26 | Defendants until within two years of filing this complaint.

27      14.    Plaintiff IRVING EPSTEIN is a natural person currently residing in New York.
28 | Plaintiff EPSTEIN was prescribed and ingested Plavix thereafter suffering severe physical,

1  economic and emotional injuries as a result of said Plavix, including but not limited to a TTP.
2  Plaintiff EPSTEIN was unaware that her injuries were caused by Defendants until within two
3  years of filing this complaint.

4      15.     Plaintiff KIM B. LOPEZ is a natural person currently residing in Florida.
5  Plaintiff LOPEZ was prescribed and ingested Plavix thereafter suffering severe physical,
6  economic and emotional injuries as a result of said Plavix, including but not limited to
7  gastrointestinal bleeding. Plaintiff LOPEZ was unaware that her injuries were caused by
8  Defendants until within two years of filing this complaint.

9      16.     Plaintiff ROBERT C. LOUGH is a natural person currently residing in Florida.
10 Plaintiff LOUGH was prescribed and ingested Plavix thereafter suffering severe physical,
11 economic and emotional injuries as a result of said Plavix, including but not limited to excessive
12 bleeding. Plaintiff LOUGH was unaware that his injuries were caused by Defendants until
13 within two years of filing this complaint.

14     17.     Plaintiff RUTH LOYD is a natural person currently residing in Ohio. Plaintiff
15 LOYD was prescribed and ingested Plavix thereafter suffering severe physical, economic and
16 emotional injuries as a result of said Plavix, including but not limited to excessive bleeding.
17 Plaintiff LOYD was unaware that his injuries were caused by Defendants until within two years
18 of filing this complaint.

19     18.     Plaintiff ELEANOR MALAM is a natural person currently residing in Missouri.
20 Plaintiff MALAM was prescribed and ingested Plavix thereafter suffering severe physical,
21 economic and emotional injuries as a result of said Plavix, including but not limited to excessive
22 bleeding. Plaintiff MALAM was unaware that his injuries were caused by Defendants until
23 within two years of filing this complaint.

24     19.     Plaintiff JAMES MARTIN is a natural person currently residing in Missouri.
25 Plaintiff MARTIN was prescribed and ingested Plavix thereafter suffering severe physical,
26 economic and emotional injuries as a result of said Plavix, including but not limited to excessive
27 bleeding. Plaintiff MARTIN was unaware that his injuries were caused by Defendants until
28 within two years of filing this complaint.

1    20.    Plaintiff JAMIE MATTILA as successor-in-interest on behalf of the Estate of
2  MARGARET BARTNICKI, and individually, is a natural person currently residing in
3  Wisconsin and is the heir of decedent BARTNICKI. Decedent BARTNICKI was prescribed
4  and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a
5  result of said Plavix, including but not limited to excessive bleeding. Plaintiff MATTILA was
6  unaware that decedent's injuries were caused by Plavix until within two years of filing this
7  complaint.

8    21.    Plaintiff MAUREEN A. MCCOY, is a natural person currently residing in
9  Florida. Plaintiff MCCOY was prescribed and ingested Plavix thereafter suffering severe
10 physical, economic and emotional injuries as a result of said Plavix, including but not limited to
11 gastrointestinal bleeding. Plaintiff MCCOY was unaware that his injuries were caused by
12 Defendants until within two years of filing this complaint.

13    22.    Plaintiff IMOGENE MCCURLEY, is a natural person currently residing in
14 Missouri. Plaintiff MCCURLEY was prescribed and ingested Plavix thereafter suffering severe
15 physical, economic and emotional injuries as a result of said Plavix, including but not limited to
16 gastrointestinal bleeding. Plaintiff MCCURLEY was unaware that his injuries were caused by
17 Defendants until within two years of filing this complaint.

18    23.    Plaintiff ANN MCGOVERN, is a natural person currently residing in Maryland.
19 Plaintiff MCGOVERN was prescribed and ingested Plavix thereafter suffering severe physical,
20 economic and emotional injuries as a result of said Plavix, including but not limited to
21 gastrointestinal bleeding. Plaintiff MCGOVERN was unaware that his injuries were caused by
22 Defendants until within two years of filing this complaint.

23    24.    Plaintiff MAGGIE BREWER, is a natural person currently residing in Kansas.
24 Plaintiff BREWER was prescribed and ingested Plavix thereafter suffering severe physical,
25 economic and emotional injuries as a result of said Plavix, including but not limited to
26 gastrointestinal bleeding. Plaintiff BREWER was unaware that his injuries were caused by
27 Defendants until within two years of filing this complaint.

28    25.    Plaintiff MICHAEL MILLER, is a natural person currently residing in Alabama.

Plaintiff MILLER was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to gastrointestinal bleeding. Plaintiff MILLER was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

26.    Plaintiff JESSE MOORE as successor-in-interest on behalf of the Estate of POLLY MOORE, and individually, is a natural person currently residing in North Carolina and is the heir of decedent MOORE. Decedent MOORE was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to excessive bleeding. Plaintiff MOORE was unaware that decedent's injuries were caused by Plavix until within two years of filing this complaint.

27.    Plaintiff FRANK MORMUR is a natural person currently residing in Florida. Plaintiff MORMUR was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to bleeding ulcers. Plaintiff MORMUR was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

28.    Plaintiff KENNETH MORRILL is a natural person currently residing in Connecticut. Plaintiff MORRILL was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to bleeding ulcers. Plaintiff MORRILL was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

29.    Plaintiff MARY C. MOXLEY is a natural person currently residing in Florida. Plaintiff MOXLEY was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to bleeding ulcers. Plaintiff MOXLEY was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

30.    Plaintiff VALMORE NADIN is a natural person currently residing in Florida. Plaintiff NADIN was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to bleeding

1  ulcers. Plaintiff NADIN was unaware that her injuries were caused by Defendants until within

2  two years of filing this complaint.

3       31.    Plaintiff WALTER NAGORSKI is a natural person currently residing in

4  Kansas. Plaintiff NAGORSKI was prescribed and ingested Plavix thereafter suffering severe

5  physical, economic and emotional injuries as a result of said Plavix, including but not limited to

6  bleeding ulcers. Plaintiff NAGORSKI was unaware that her injuries were caused by Defendants

7  until within two years of filing this complaint.

8       32.    Plaintiff ALEX NAHORNEY is a natural person currently residing in Texas.

9  Plaintiff NAHORNEY was prescribed and ingested Plavix thereafter suffering severe physical,

10  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding

11  ulcers. Plaintiff NAHORNEY was unaware that her injuries were caused by Defendants until

12  within two years of filing this complaint.

13       33.    Plaintiff CAROL A. NEBEL is a natural person currently residing in Iowa.

14  Plaintiff NEBEL was prescribed and ingested Plavix thereafter suffering severe physical,

15  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding

16  ulcers. Plaintiff NEBEL was unaware that her injuries were caused by Defendants until within

17  two years of filing this complaint.

18       34.    Plaintiff WILLIAM NEWMAN is a natural person currently residing in

19  Minnesota. Plaintiff NEWMAN was prescribed and ingested Plavix thereafter suffering severe

20  physical, economic and emotional injuries as a result of said Plavix, including but not limited to

21  bleeding ulcers. Plaintiff NEWMAN was unaware that her injuries were caused by Defendants

22  until within two years of filing this complaint.

23       35.    Plaintiff MARY NIET as successor-in-interest on behalf of the Estate of FRANK

24  NIET, and individually, is a natural person currently residing in Missouri and is the heir of

25  decedent NIET. Decedent NIET was prescribed and ingested Plavix thereafter suffering severe

26  physical, economic and emotional injuries as a result of said Plavix, including but not limited to

27  excessive bleeding. Plaintiff NIET was unaware that decedent's injuries were caused by Plavix

28  until within two years of filing this complaint.

1    36.    Plaintiff LARRY NOBLE is a natural person currently residing in Kansas.
2  Plaintiff NOBLE was prescribed and ingested Plavix thereafter suffering severe physical,
3  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding
4  ulcers. Plaintiff NOBLE was unaware that her injuries were caused by Defendants until within
5  two years of filing this complaint.

6    37.    Plaintiff LINDA NOELL is a natural person currently residing in Illinois.
7  Plaintiff NOWELL was prescribed and ingested Plavix thereafter suffering severe physical,
8  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding
9  ulcers. Plaintiff NOWELL was unaware that her injuries were caused by Defendants until
10  within two years of filing this complaint.

11    38.    Plaintiff JOHN NORMAN is a natural person currently residing in Missouri.
12  Plaintiff NORMAN was prescribed and ingested Plavix thereafter suffering severe physical,
13  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding
14  ulcers. Plaintiff NORMAN was unaware that her injuries were caused by Defendants until
15  within two years of filing this complaint.

16    39.    Plaintiff HAROLD OAKS is a natural person currently residing in Ohio. Plaintiff
17  OAKS was prescribed and ingested Plavix thereafter suffering severe physical, economic and
18  emotional injuries as a result of said Plavix, including but not limited to bleeding ulcers.
19  Plaintiff OAKS was unaware that her injuries were caused by Defendants until within two years
20  of filing this complaint.

21    40.    Plaintiff REBECCA PAYNE is a natural person currently residing in Alabama.
22  Plaintiff PAYNE was prescribed and ingested Plavix thereafter suffering severe physical,
23  economic and emotional injuries as a result of said Plavix, including but not limited to bleeding
24  ulcers. Plaintiff PAYNE was unaware that his injuries were caused by Defendants until within
25  two years of filing this complaint.

26    41.    Plaintiff HANS J. PFEIFFER is a natural person currently residing in Florida.
27  Plaintiff PFEIFFER was prescribed and ingested Plavix thereafter suffering severe physical,
28  economic and emotional injuries as a result of said Plavix, including but not limited to

1  gastrointestinal bleeding. Plaintiff PFEIFFER was unaware that his injuries were caused by
2  Defendants until within two years of filing this complaint.

3      42.    Plaintiff AUDREY PUGH as successor-in-interest on behalf of the Estate of
4  ROBBIE LEE PUGH, and individually, is a natural person currently residing in Missouri and is
5  the heir of decedent PUGH. Decedent PUGH was prescribed and ingested Plavix thereafter
6  suffering severe physical, economic and emotional injuries as a result of said Plavix, including
7  but not limited to excessive bleeding. Plaintiff PUGH was unaware that decedent's injuries were
8  caused by Plavix until within two years of filing this complaint.

9      43.    Plaintiff JUDITH RANDALL is a natural person currently residing in Florida.
10  Plaintiff RANDALL was prescribed and ingested Plavix thereafter suffering severe physical,
11  economic and emotional injuries as a result of said Plavix, including but not limited to excessive
12  bleeding. Plaintiff RANDALL was unaware that her injuries were caused by Defendants until
13  within two years of filing this complaint.

14      44.    Plaintiff NIEL REDDINGTON is a natural person currently residing in
15  Pennsylvania. Plaintiff REDDINGTON was prescribed and ingested Plavix thereafter
16  suffering severe physical, economic and emotional injuries as a result of said Plavix, including
17  but not limited to excessive bleeding. Plaintiff REDDINGTON was unaware that her injuries
18  were caused by Defendants until within two years of filing this complaint.

19      45.    Plaintiff DAVID RIPPER is a natural person currently residing in Missouri.
20  Plaintiff RIPPER was prescribed and ingested Plavix thereafter suffering severe physical,
21  economic and emotional injuries as a result of said Plavix, including but not limited to excessive
22  bleeding. Plaintiff RIPPER was unaware that her injuries were caused by Defendants until
23  within two years of filing this complaint.

24      46.    Plaintiff JUNE MILLER RUBY as successor-in-interest on behalf of the Estate
25  of HELEN MILLER, and individually, is a natural person currently residing in North Carolina
26  and is the heir of decedent MILLER. Decedent MILLER was prescribed and ingested Plavix
27  thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix,
28  including but not limited to excessive bleeding. Plaintiff RUBY was unaware that decedent's

1   injuries were caused by Plavix until within two years of filing this complaint.

2       47.    Plaintiff SAM SALUZZI is a natural person currently residing in **Missouri.**

3   Plaintiff SALUZZI was prescribed and ingested Plavix thereafter suffering severe physical,

4   economic and emotional injuries as a result of said Plavix, including but not limited to excessive

5   bleeding. Plaintiff SALUZZI was unaware that her injuries were caused by Defendants until

6   within two years of filing this complaint.

7       48.    Plaintiff ROGER SCHULSTAD is a natural person currently residing in

8   **Oklahoma.** Plaintiff SCHULSTAD was prescribed and ingested Plavix thereafter suffering

9   severe physical, economic and emotional injuries as a result of said Plavix, including but not

10  limited to excessive bleeding. Plaintiff SCHULSTAD was unaware that her injuries were caused

11  by Defendants until within two years of filing this complaint.

12      49.    Plaintiff JOHN SCHWEGMAN is a natural person currently residing in

13  **Minnesota.** Plaintiff SCHWEGMAN was prescribed and ingested Plavix thereafter suffering

14  severe physical, economic and emotional injuries as a result of said Plavix, including but not

15  limited to excessive bleeding. Plaintiff SCHWEGMAN was unaware that her injuries were

16  caused by Defendants until within two years of filing this complaint.

17      50.    Plaintiff NATHANIEL SCOTT is a natural person currently residing in

18  **Mississippi.** Plaintiff SCOTT was prescribed and ingested Plavix thereafter suffering severe

19  physical, economic and emotional injuries as a result of said Plavix, including but not limited to

20  excessive bleeding. Plaintiff SCOTT was unaware that her injuries were caused by Defendants

21  until within two years of filing this complaint.

22      51.    Plaintiff RUTH SEEBER is a natural person currently residing in **Wisconsin.**

23  Plaintiff SEEBER was prescribed and ingested Plavix thereafter suffering severe physical,

24  economic and emotional injuries as a result of said Plavix, including but not limited to excessive

25  bleeding. Plaintiff SEEBER was unaware that her injuries were caused by Defendants until

26  within two years of filing this complaint.

27      52.    Plaintiff GEORGE A. SELLERY is a natural person currently residing in

28  **Florida.** Plaintiff SELLERY was prescribed and ingested Plavix thereafter suffering severe

1  physical, economic and emotional injuries as a result of said Plavix, including but not limited to
2  excessive bleeding. Plaintiff SELLERY was unaware that her injuries were caused by
3  Defendants until within two years of filing this complaint.

4      53.    Plaintiff FRANK SHABAZIAN is a natural person currently residing in New
5  York. Plaintiff SHABAZIAN was prescribed and ingested Plavix thereafter suffering severe
6  physical, economic and emotional injuries as a result of said Plavix, including but not limited to
7  excessive bleeding. Plaintiff SHABAZIAN was unaware that her injuries were caused by
8  Defendants until within two years of filing this complaint.

9      54.    Plaintiff SHERWIN SILVERMAN is a natural person currently residing in
10 Minnesota. Plaintiff SILVERMAN was prescribed and ingested Plavix thereafter suffering
11 severe physical, economic and emotional injuries as a result of said Plavix, including but not
12 limited to excessive bleeding. Plaintiff SILVERMAN was unaware that her injuries were caused
13 by Defendants until within two years of filing this complaint.

14      55.    Plaintiff ALMAJENE SMITH is a natural person currently residing in Missouri.
15 Plaintiff SMITH was prescribed and ingested Plavix thereafter suffering severe physical,
16 economic and emotional injuries as a result of said Plavix, including but not limited to excessive
17 bleeding. Plaintiff SMITH was unaware that her injuries were caused by Defendants until within
18 two years of filing this complaint.

19      56.    Plaintiff BARBARA SMITH is a natural person currently residing in Missouri.
20 Plaintiff SMITH was prescribed and ingested Plavix thereafter suffering severe physical,
21 economic and emotional injuries as a result of said Plavix, including but not limited to
22 gastrointestinal bleeding. Plaintiff SMITH was unaware that her injuries were caused by
23 Defendants until within two years of filing this complaint.

24      57.    Plaintiff DALE SMITH is a natural person currently residing in Missouri.
25 Plaintiff SMITH was prescribed and ingested Plavix thereafter suffering severe physical,
26 economic and emotional injuries as a result of said Plavix, including but not limited to
27 gastrointestinal bleeding. Plaintiff SMITH was unaware that her injuries were caused by
28 Defendants until within two years of filing this complaint.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

58.    Plaintiff MARLYN STREET is a natural person currently residing in Florida. Plaintiff STREET was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to excessive bleeding. Plaintiff STREET was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

59.    Plaintiff RONALD F. SWANSON is a natural person currently residing in Minnesota. Plaintiff SWANSON was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to excessive bleeding. Plaintiff SWANSON was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

60.    Plaintiff DIANA TAYLOR, as successor-in-interest on behalf of the Estate of DON SMART and individually, is a natural person currently residing in Missouri and is the heir of decedent SMART. Decedent SMART was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to bleeding ulcers. Plaintiff TAYLOR was unaware that decedent's injuries were caused by Plavix until within two years of filing this complaint.

61.    Plaintiff WILMA J. TAYLOR is a natural person currently residing in Missouri. Plaintiff TAYLOR was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to excessive bleeding. Plaintiff TAYLOR was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

62.    Plaintiff PEGGY A. TETEN is a natural person currently residing in Florida. Plaintiff TETEN was prescribed and ingested Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said Plavix, including but not limited to excessive bleeding. Plaintiff TETEN was unaware that his injuries were caused by Defendants until within two years of filing this complaint.

63.    Plaintiff ANNETTE THOMAS is a natural person currently residing in Texas. Plaintiff THOMAS was prescribed and ingested Plavix thereafter suffering severe physical,

1    economic and emotional injuries as a result of said Plavix, including but not limited to excessive

2    bleeding. Plaintiff THOMAS was unaware that his injuries were caused by Defendants until

3    within two years of filing this complaint.

4        64.    Plaintiff ELIZABETH TOMPKINS, as successor-in-interest on behalf of the

5    Estate of DOUGLAS SMITH and individually, is a natural person currently residing in

6    Arkansas and is the heir of decedent SMITH. Decedent SMITH was prescribed and ingested

7    Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said

8    Plavix, including but not limited to bleeding ulcers. Plaintiff TOMPKINS was unaware that

9    decedent's injuries were caused by Plavix until within two years of filing this complaint.

10       65.    Plaintiff LEROY TURCHIN is a natural person currently residing in Minnesota.

11   Plaintiff TURCHIN was prescribed and ingested Plavix thereafter suffering severe physical,

12   economic and emotional injuries as a result of said Plavix, including but not limited to excessive

13   bleeding. Plaintiff TURCHIN was unaware that his injuries were caused by Defendants until

14   within two years of filing this complaint.

15       66.    Plaintiff RENE VILLAREEAL is a natural person currently residing in Florida.

16   Plaintiff VILLAREEAL was prescribed and ingested Plavix thereafter suffering severe physical,

17   economic and emotional injuries as a result of said Plavix, including but not limited to excessive

18   bleeding. Plaintiff VILLAREEAL was unaware that his injuries were caused by Defendants

19   until within two years of filing this complaint.

20       67.    Plaintiff JIMMY WALKER is a natural person currently residing in Alabama.

21   Plaintiff WALKER was prescribed and ingested Plavix thereafter suffering severe physical,

22   economic and emotional injuries as a result of said Plavix, including but not limited to excessive

23   bleeding. Plaintiff WALKER was unaware that his injuries were caused by Defendants until

24   within two years of filing this complaint.

25       68.    Plaintiff EDWARD WALLER, as successor-in-interest on behalf of the Estate of

26   MARY WALLER and individually, is a natural person currently residing in Ohio and is the heir

27   of decedent WALLER. Decedent WALLER was prescribed and ingested Plavix thereafter

28   suffering severe physical, economic and emotional injuries as a result of said Plavix, including

1    but not limited to bleeding ulcers. Plaintiff WALLER was unaware that decedent's injuries were

2    caused by Plavix until within two years of filing this complaint.

3         69.    Plaintiff CONNIE WAPP, as successor-in-interest on behalf of the Estate of

4    WILLIAM WHITESELL and individually, is a natural person currently residing in Kansas and

5    is the heir of decedent WHITESELL. Decedent WHITESELL was prescribed and ingested

6    Plavix thereafter suffering severe physical, economic and emotional injuries as a result of said

7    Plavix, including but not limited to bleeding ulcers. Plaintiff WAPP was unaware that

8    decedent's injuries were caused by Plavix until within two years of filing this complaint.

9    **DEFENDANTS**

10        70.    Defendant McKesson Corporation is a pharmaceutical distribution and marketing

11   company organized and existing under the laws of the State of Delaware, with its headquarters

12   at One Post Street, San Francisco, California 94104.

13        71.    Defendant Bristol-Myers Squibb Company (hereinafter referred to as "BMS" or

14   "Manufacturing Defendant(s)") is a pharmaceutical manufacturing and marketing company that

15   manufactures and markets Plavix in the United States. The headquarters for Bristol-Myers

16   Squibb Company is located at 345 Park Avenue, New York, New York, 10145-0037.

17

18        72.    Defendant, Sanofi-Aventis U.S. LLC is a subsidiary of the French pharmaceutical

19   company, Sanofi-Aventis, which partners with Defendant Bristol-Myers Squibb Company to

20   manufacture and market Plavix in the United States.  The American base for Sanofi-Aventis U.S.

21   LLC is 400 Somerset Corporate Boulevard, SC4-310A, Bridgewater, New Jersey, 08807-0912.

22

23        73.    Defendant Sanofi-Aventis U.S., Inc., is a subsidiary of the French pharmaceutical

24   company, Sanofi-Aventis, which partners with Defendant Bristol-Myers Squibb Company to

25   manufacture and market Plavix in the United States.  The American base for Sanofi-Aventis

26   U.S., Inc., is 400 Somerset Corporate Boulevard, SC4-310A, Bridgewater, New Jersey, 08807-

27   0912.

28

74.     Defendant Sanofi-Synthelabo, Inc., is a Delaware corporation with its commercial headquarters at 90 Park Avenue, New York, New York 10016.  Sanofi-Synthelabo, Inc., did business as Sanofi Pharmaceuticals, Inc., and was the sponsor for the drug application for Plavix. Sanofi-Synthelabo, Inc., is an affiliate of Sanofi-Aventis, Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc., that was instrumental in bringing Plavix to market.

75.     The three Sanofi Defendants—Sanofi-Aventis U.S. LLC, Sanofi-Aventis U.S., Inc. and Sanofi-Synthelabo, Inc.—will be collectively referred to as "Sanofi" in this Complaint.

76.     When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants".

## FACTUAL ALLEGATIONS

77.     This is an action for injuries and damages suffered by Plaintiffs, and each of them, as a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of Plavix.

78.     Plavix was designed, developed, manufactured, tested, labeled, packaged, promoted, marketed, distributed, and/or sold by Defendants.

79.     The Sanofi Defendants and BMS co-developed Plavix, applying in April 1997 for a rare, priority regulatory review by the FDA (Food and Drug Administration), which cleared the way for the Defendants to bring Plavix to market in November 1998.

80.     The rush to obtain FDA approval of Plavix is indicative of the Defendants' emphasis on marketing and profit making over patient safety.

81.     Plavix was heavily marketed directly to consumers through television, magazine and Internet advertising.  It was touted as a "super-aspirin," that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin, while being safer and easier on a person's stomach than aspirin.  Those assertions have proven to be false.

82.     The truth is, that BMS and Sanofi always knew, or if they had paid attention to the findings of their own studies, should have known, that Plavix was not more efficacious than

aspirin to prevent heart attacks and strokes. More importantly though, Defendants knew or should have known that when taking Plavix, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder, or death far outweigh any potential benefit.

83.    Still, BMS and Sanofi continued to exaggerate the results of their own studies and to make false statements in their advertising and promotional materials for the purpose of increasing their profit from Plavix sales.

84.    The profit at stake for the Defendants is enormous. By way of illustration, in 2005, Plavix was the sixth top selling drug in the United States and the Defendants enjoy annual sales of Plavix totaling $3.8 Billion Dollars.

85.    BMS and the Sanofi Defendants repeatedly thwarted the law and their duty to tell the public the truth about the drug they were over-promoting for profit. The FDA issued numerous letters insisting these Defendants stop their misleading, over-promoting practices.

86.    As examples, in 1998, the FDA requested the Defendants stop promoting Plavix for off-label use in patients receiving arterial stents. In the same reprimand, the FDA noted that not only were the Defendants marketing Plavix to physicians for a treatment for which it had not been approved, but also were recommending that a non-FDA-approved dosage nearly four (4) times that of other applications be given.

87.    That same FDA warning criticized the Defendants' attempts at over-promotion of Plavix for unapproved use for lacking fair balance and failing to disclose any of the risks associated with its use. In particular, the FDA criticized that the Defendants were claiming to physicians, in their promotional letter, that Plavix was safe for use with other drugs. This, said the FDA, was overstating the safety profile of Plavix. In particular, its safety when combined with aspirin (known as "dual therapy") had not been established, yet Defendants were making a claim that the dual combination therapy of aspirin plus Plavix was safe. This claim has now been proven to be untrue in a recent study called CHARISMA (The Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance), which was reported on in *The New England Journal of Medicine*, April 20, 2006.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

88.    Again in 1998, the FDA issued a letter demanding the Defendants immediately cease distribution of advertising materials that claimed that Plavix has been proven to be more effective than aspirin.  The FDA criticized this marketing ploy as an overstatement of efficacy that is lacking in fair balance and unsubstantiated.

89.    Undaunted, the Defendants were back in the business of hiding bad facts about their drug and fabricating more favorable information so they could sell large quantities of Plavix and make giant corporate profits.  In 2001, the FDA was again forced to order Defendants to immediately cease distribution of promotional material that made unsubstantiated claims about Plavix and was misleading.  Specifically, the Defendants promotional material misled consumers about their own study, called CAPRIE, (Clopidogrel Versus Aspirin in Patients at Risk of Ischemic Events).  While the Defendants' trumped-up promotional material claimed that Plavix was 19.2% better than Aspirin, the actual findings of the CAPRIE study were that Plavix was not proven to be significantly more effective than aspirin—providing a 2.9% reduction in ischemic events versus a 3.47% reduction of ischemic events for the study participants who had been given aspirin.  Defendants again claimed that the use of Plavix combined with aspirin was safe and effective, and again, the FDA forced Defendants to stop saying that because it had not been proven to be true.

90.    In addition to misinforming physicians and the public through their advertising to consumers and promotional materials for doctors, Defendants' drug representatives have also misinformed physicians about the proper types of patients who should be given Plavix, the duration of its proper usage, and the applications for which it is safe and FDA approved.

91.    Defendants, through their drug representatives, and their promotional efforts, have encouraged physicians to prescribe Plavix to a broad population of people who would receive the same therapeutic benefit from aspirin alone, (without risking death) and to use Plavix for unapproved applications.

92.    The result is that physicians are prescribing Plavix to people who could be cheaply and effectively protected against ischemic events by a simple aspirin, to pay

19

approximately four dollars ($4) a day for a dose of Plavix.

93.    Defendants' nearly eight-year run of lying to physicians and the public about the safety and efficacy of Plavix for the sole purpose of increasing corporate profits has now been uncovered by scientific studies which reveal that not only is Plavix not worth its high price—it is dangerous.

94.    The Chan study, written about in *The New England Journal of Medicine* and named for the scientific researcher who conducted it, showed the fallacy of Defendants' assertions that Plavix is safer and more effective for patients who have a gastrointestinal intolerance to aspirin. The Chan study compared the effects of Aspirin and Plavix on patients who had previously had stomach ulcers that had healed. In that group, the incidence of recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group. Dr. Chan recommended that the prescribing guidelines for Plavix be changed so that patients would not erroneously believe that Plavix is safer on the stomach than aspirin.

95.    The Chan study also uncovered the fact that an aspirin a day plus esomeprazole (the generic name for a cheap, over the counter proton pump inhibitor like Prilosec) is far more cost effective for the consumer than paying for a four- dollar ($4) a-day Plavix pill that greatly increases the risk of stomach bleeding.

96.    Most recently, the CHARISMA (Clopidogrel and aspirin Versus Aspirin Alone For The Prevention of Atherothrombotic Events) study uncovered another truth about Plavix. It found that Plavix plus aspirin (dual therapy) is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events. But more importantly, it found that in patients who do not have peripheral arterial disease (PAD) or acute coronary syndrome (ACS), Plavix plus aspirin (dual therapy) poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death. In other words, in those patients without ACS or PAD, dual therapy with aspirin and Plavix does more harm than good.

97.    Despite the growing body of scientific knowledge that the four-dollar ($4) Plavix pill was not much better than a five-cent-a-day aspirin, Defendants kept promoting it to the

20
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

public and to physicians, using hyperbole and outright falsification in the process.

## FIRST CAUSE OF ACTION
### [Strict Products Liability – Design Defect]

98.     Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendants, and each of them, as follows:

99.     The Plavix manufactured and supplied by Defendants was defective and unsafe for its intended purpose in that the ingestion of Plavix causes serious injuries and/or death. The defect existed in said product at the time it left the possession of the Defendants and each of them. Said product did, in fact, cause personal injuries as described herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

100.    The Plavix manufactured and supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

101.    Alternatively, the Plavix manufactured and supplied by Defendants was defective in design or formulation in that when it was placed in the stream of commerce in that it failed to perform as safely as an ordinary consumer would expect and was more dangerous than other anticoagulant therapies.

102.    The Plavix manufactured and supplied by Defendants was also defective due to inadequate warning or instruction because the Defendants knew or should have known that the product created a serious risk of harm to consumers and Defendants failed to adequately warn consumers of said risks, including Ingesting Plaintiffs and Decedents.

103.    Defendants, and each of them, knew and intended that Plavix would be used by the ordinary purchaser or user without inspection for defects therein and without knowledge of the hazards involved in such use.

104.    The Plavix manufactured and supplied by Defendants was defective due to inadequate warning and inadequate testing.

105.    The Plavix manufactured and supplied by Defendants was defective due to inadequate post-market warnings and instructions, because Defendants knew or should have known of the risk of serious injury from Plavix, however said Defendants failed to provide adequate warnings to users and consumers of the product, including Ingesting Plaintiffs and Decedents, and continued to promote the product.

106.    On or before all times relevant to this matter, Defendants, and each of them, were aware that members of the general public, including Ingesting Plaintiffs and Decedents, who would ingest their product had no knowledge or information indicating that use of their product could cause injury, and said Defendants, and each of them, knew that members of the general public, including Ingesting Plaintiffs and Decedents, who used their product, would assume, and in fact did assume, that said use was safe, when in fact said use was extremely hazardous to health and human life.

107.    With said knowledge, said Defendants, and each of them, opted to manufacture, design, label, distribute, offer for sale, supply, sell, package, and advertise said product without attempting to protect said product users from, or warn of, the high risk of injury or death resulting from its use.

108.    Rather than attempting to protect users from, or warn them of, the high risk of injury or death resulting from use of their product, Defendants, and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from members of the general public, including Ingesting Plaintiffs and Decedents, thus impliedly representing to members of the general public that Plavix was safe for all reasonably foreseeable uses.

109.    The above-referenced conduct of said Defendants, and each of them, was motivated by the financial interest of said Defendants, in the continuing, uninterrupted manufacture, supply, sale, marketing, packaging and advertising of Plavix.

110.    In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users of their product and in fact were consciously willing and intended to permit Plavix to cause injury to users and induced persons to purchase and use

1  Plavix, including Plaintiffs herein.

2       111.    Defendants, their "alternate entities," and each of them, and their officers,

3  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

4  had full knowledge of, or should have known of, each of the acts set forth herein.

5       112.    The herein-described conduct of said Defendants, and each of them, was and is

6  willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the

7  safety and health of the users of their product. Ingesting Plaintiffs and the Plaintiffs'

8  representing the interests of Decedent's estates, for the sake of example and by way of

9  punishing said defendants, seeks punitive damages according to proof.

10      113.    As a proximate and legal result of the defective and unreasonably dangerous

11 condition of Plavix tested, manufactured and supplied by Defendants, and the lack of adequate

12 use instructions and warnings, Decedents were cause injury and death and Plaintiffs were

13 caused to suffer and will continue to suffer the herein described injuries and damages.

14      WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set

15 forth.

16                          **SECOND CAUSE OF ACTION**
                          **[Strict Liability – Manufacturing Defect]**
17

18      114.    Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by

19 reference all previous paragraphs of this Complaint as if fully set forth herein and further allege

20 as to Defendants, and each of them, as follows:

21      115.    At all times herein mentioned, Defendants' Plavix products were prescribed and

22 used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

23      116.    The Plavix products were defective at the time of their manufacture,

24 development, production, testing, inspection, endorsement, prescription, sale and distribution,

25 and at the time they left the possession of the Defendants, in that, and not by way of limitation,

26 the products differed from the Defendants' intended result and intended design and

27 specifications, and from other ostensibly identical units of the same product line.

28      117.    As a proximate and legal result of the defective condition of the Plavix,