# EXHIBIT H

# EXHIBIT A

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Lori Cummings
Filing ID 777664
1/19/2011 1:29:20 PM

1

Jeffrey B. Miller #009771
jeff@rmgmo.com

2

**MILLER WEBER KORY LLP**
1112 East Washington Street

3

Phoenix, Arizona 85034
(602) 253-3554 (602) 340-1896 (fax)

4

*Attorneys for Plaintiff*

5

--and--

6

P. ANN TRANTHAM, ESQ., State Bar #30972
1901 Texas Street

7

Natchitoches, LA 71457
Telephone: (318) 352-5999

8

Email: patrantham@cp-tel.net
robertsalim@cp-tel.net

9

*Pro Hac to Be Submitted*

10

11

12

**IN SUPERIOR COURT FOR THE STATE OF ARIZONA**

13

**IN AND FOR THE COUNTY OF MARICOPA**

14

BEATRICE MILLS,

Case No. CV2011-000415

15

Plaintiff,

16

v.

17

BRISTOL-MYERS SQUIBB COMPANY,
SANOFI-AVENTIS U.S., L.L.C.,

**PLAINTIFF'S FIRST
AMENDED COMPLAINT**

18

SANOFI-AVENTIS, U.S., INC., and
SANOFI-SYNTHELABO, INC.

**(Assigned to the Honorable
Sam Myers)**

19

Defendants.

20

21

22

23

     **COMES NOW** Beatrice Mills, hereinafter referred to as the "Plaintiff" who files

24

this Complaint, complaining of and for her cause of action against, BRISTOL-MYERS

25

SQUIBB COMPANY, SANOFI-AVENTIS, U.S., L.L.C., SANOFI-AVENTIS, U.S.,

26

INC., AND SANOFI-SYNTHELABO, INC., the Plaintiffs, by and through their

27

undersigned attorney, for their Complaint against Defendants, state and allege as follows:

28

1

This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, PLAVIX. Plaintiff's damages arose as a result of her ingestion of Defendants PLAVIX drug which was manufactured, marketed, distributed and sold by Defendants and/or Defendants representatives and placed in the stream of commerce in this state by Defendants.

## I.

## PARTIES

### PLAINTIFFS

1.     Plaintiff, Beatrice Mills, a natural person, is a citizen and resident of Fountain Hills, Maricopa County. Currently, Beatrice Mills resides at 16003 Burro Drive, Fountain Hills, Maricopa County, Arizona 85268, and was treated in said county for her injuries. At all times relative to this complaint, Beatrice Mills, resided at 739 Las Colinas, Chandler, Maricopa County, Arizona, 85249.

### DEFENDANTS

2.     Defendant, Bristol-Myers Squibb Company (hereinafter referred to as "BMS") is a pharmaceutical manufacturing and marketing company that partners with Sanofi-Aventis (now Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc.) to manufacture and market Plavix in the United States. The headquarters for Bristol-Myers Squibb Company is located at 345 Park Avenue, New York, New York, 10145-0037.

3.     Defendant, Sanofi-Aventis U.S. L.L.C. is a subsidiary of the French pharmaceutical company, Sanofi-Aventis, which partners with Defendant Bristol-Myers

2

Squibb Company to manufacture and market Plavix in the United States. The American

base for Sanofi-Aventis U.S. L.L.C. is 400 Somerset Corporate Boulevard, SC4-310A,

Bridgewater, New Jersey 08807-0912.

4.      Defendant, Sanofi-Aventis U.S., Inc., is a subsidiary of the French

pharmaceutical company, Sanofi-Aventis, which partners with Defendant Bristol-Myers

Squibb Company to manufacture and market Plavix in the United States. The American

base for Sanofi-Aventis U.S., Inc., is 400 Somerset Corporate Boulevard, SC4-310A,

Bridgewater, New Jersey, 08807-0912.

5.      Defendant, Sanofi-Synthelabo, Inc., is a Delaware corporation with its

commercial headquarters at 90 Park Avenue, New York, New York, 10016. Sanofi-

Synthelabo, Inc., did business as Sanofi Pharmaceuticals, Inc., and was the sponsor for

Plavix application for Plavix. Sanofi-Synthelabo, Inc., is an affiliate of Sanofi-Aventis,

Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc., that was instrumental in bringing

Plavix to market.

6.      The three Sanofi Defendants—Sanofi-Aventis U.S. LLC, Sanofi-Aventis

U.S. Inc., and Sanofi-Synthelabo, Inc., will be collectively referred to as "Sanofi" in this

complaint.

## II.

## JURISDICTION AND VENUE

7.      Consistent with the Due Process Clause of the Fifth and Fourteenth

Amendments, this Court has *in personam* jurisdiction over the Defendants, because

Defendants are present in the State of Arizona such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

8. This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Arizona's long-arm statute and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

    a. Defendants transacted business in the State of Arizona;

    b. Defendants owned, used or possessed real estate situated in the State of Arizona;

    c. Defendants made or performed a contract or promise substantially connected within this state;

    d. Defendants do business in and within Arizona; and,

    e. Requiring Defendants to litigate this claim in Arizona does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

9. Defendants marketed, promoted, and sold Plavix throughout the United States, including Maricopa County, Arizona. Additionally, the Plaintiffs herein suffered injury from Plavix in Maricopa County, Arizona. Accordingly venue is proper under the Arizona Code of Civil Procedure.

## III.

## FACTS COMMON TO ALL COUNTS

10. This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' negligence and wrongful conduct in connection with the design,

development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and sale of Plavix.

11. At all material times, Plavix was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants.

12. The Sanofi Defendants and BMS co-developed Plavix, applying in April 1997, for a rare *priority regulatory review*, by the U.S. Food and Drug Administration (FDA), which cleared the way for the Defendants to bring Plavix to market in November 1997.

13. The rush to obtain FDA approval of Plavix is indicative of Defendants' emphasis on marketing and profit making over patient safety.

14. Plavix was heavily marketed directly to consumers through television, magazine and Internet advertising. It was touted as a "super-aspirin," that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin while being safer and easier on a person's stomach than aspirin. Those assertions have proven to be false.

15. The truth is that BMS and Sanofi always knew, or if they had paid attention to the findings of their own studies, should have known, that Plavix was not more efficacious than aspirin to prevent heart attacks and strokes. More importantly though, Defendants knew or should have known that when taking Plavix, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder, or death far outweigh any potential benefit.

16.     Still, BMS and Sanofi continued to exaggerate the results of their own studies and made false statements in their advertising and promotional materials for the purpose of increasing their profits from Plavix sales.

17.     The profit at stake for the Defendants is enormous.  By way of illustration, in 2005, Plavix, was the sixth top selling drug in the United States and the Defendants enjoy annual sales of Plavix totaling $3,800,000,000.00 (3.8 billion dollars).

18.     BMS and Sanofi Defendants repeatedly thwarted the law and their duty to tell the public the truth about Plavix they were over-promoting for profit.  The FDA issued numerous letters insisting these Defendants stop their misleading, over-promotional practices.

19.     As examples, in 1998, the FDA requested the Defendants stop promoting Plavix for off-label use in patients receiving arterial stents.   In the same reprimand, the FDA noted that not only were the Defendants' marketing Plavix to physicians for a treatment for which it had not been approved, but also were recommending that a non-FDA approved dosage nearly four (4) times that of other applications be given.

20.     That same FDA warning criticized the Defendants' attempts at over-promotion of Plavix for unapproved use for lacking fair balance and failing to disclose any of the risks associated with its use.  In particular, the FDA criticized that the Defendants were claiming to physicians, in their promotional letter, that Plavix was safe for use with other drugs.  This, said the FDA, was overstating the safety profile of Plavix.  In particular, its safety when combined with aspirin (known as "dual therapy") had not been established, yet Defendants were making a claim that the dual combination therapy

of aspirin plus Plavix was safe. This claim has now been proven to be untrue in a recent study called CHARISMA (the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management and Avoidance Trial), which was reported in *The New England Journal of Medicine*, April 20, 2006.

21. Again in 1998, the FDA issued a letter demanding the Defendants immediately cease distribution of advertising materials that claimed that Plavix has been proven to be more effective than aspirin. The FDA criticized this marketing ploy as an overstatement of efficacy that is lacking in fair balance and unsubstantiated.

22. Undaunted, the Defendants were back in the business of hiding bad facts about their drug and fabricating more favorable information so they could sell large quantities of Plavix and make giant corporate profits. In 2001, the FDA was again forced to order Defendants to immediately cease distribution of promotional materials that made unsubstantiated claims about Plavix and was misleading. Specifically, the Defendants' promotional materials mislead consumers about their own study, called CAPRIE (Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events). While the Defendants' trumped-up promotional material claimed that Plavix was 19.2% better than aspirin, the actual findings of the CAPRIE study were that Plavix was not proven to be significantly more effective than aspirin-providing a 2.9% reduction in ischemic events versus a 3.47% reduction of ischemic events for the study participants who had been given aspirin. Defendants again claimed that the use of Plavix combined with aspirin was safe and effective, and again, the FDA forced Defendants to stop saying that because it had not been proven to be true.

23. In addition to misinforming physicians and the public through their advertising to consumers and promotional materials for doctors, Defendants' drug representatives have also misinformed physicians about the proper types of patients who should be given Plavix, the duration of its proper usage, and the applications for which it is safe and FDA approved.

24. Defendants, through, their drug representatives, and their promotional efforts, have encouraged physicians to prescribe Plavix to a broad population of people who would receive the same therapeutic benefit from aspirin alone, (without risking death) and to use Plavix for unapproved applications.

25. The result is that physicians are prescribing Plavix to people who could be cheaply and effectively protected against ischemic events by a simple aspirin, to pay approximately four dollars ($4.00) a day for a dose of Plavix.

26. Defendants' nearly eight-year run of lying to physicians and to the public about the safety and efficacy of Plavix for the sole purpose of increasing corporate profits has now been uncovered by scientific studies that reveal that not only is Plavix not worth its high price—it is dangerous.

27. The Chan study, written about in *The New England Journal of Medicine*, and named for the scientific researcher who conducted it, showed the fallacy of Defendants' assertion that Plavix is safer and more effective for patients who have a gastrointestinal intolerance to aspirin. The Chan study compared the effects of Aspirin and Plavix on patients who had previously had stomach ulcers that had healed. In that group, the incidence of recurring stomach bleeding was 8.6% in the Plavix group versus

8

only .7% in the aspirin group. Dr. Chan recommended that the prescribing guidelines for Plavix be changed so that the patients would not erroneously believe that Plavix is safer on the stomach than aspirin.

28. The Chan study also uncovered the fact that an aspirin a day plus esomeprazole (the generic name for a cheap, over the counter proton pump inhibitor like Prilosec) is far more cost effective for the consumer than paying for a four-dollar ($4.00) a day Plavix pill that greatly increases the risk of stomach bleeding.

29. Most recently, the CHARISMA trial uncovered another truth about Plavix. It found that Plavix plus aspirin (dual therapy) is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events. But more importantly, it found that in patients who do not have peripheral arterial disease (PAD) or acute coronary syndrome (ACS), Plavix plus aspirin (dual therapy) poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death. In other words, in those patients without ACS or PAD, dual therapy with aspirin and Plavix does more harm than good.

30. Despite the growing body of scientific knowledge that the four-dollar ($4.00) Plavix pill was not much better than a four-cent-a-day aspirin, Defendants kept promoting it to the public and to physicians, using hyperbole and outright falsification in the process.

31. Plaintiff, Beatrice Mills, was prescribed Plavix on or about January 7, 2009, by Dr. L. Xavier and continued on Plavix thereafter. On January 12, 2009, Plaintiff began to hemorrhage and sought medical treatment at the Mercy Gilbert Hospital. On January

20, 2009, Beatrice Mills was released from Mercy Gilbert Hospital.  Subsequently, Beatrice Mills was re-admitted to Mercy Gilbert Hospital, on January 25, 2009, for continual problems relating to clotting and bleeding.  Beatrice Mills was finally discharged from the hospital on January 30, 2009.

32.    The label for Plavix drug products, known as the "Package Insert" was developed by the Defendants and accompanied all Plavix prescription drug products and/or samples and was published in the Physician's Desk Reference.

33.    Drug labeling is to include accurate information concerning a drug's active and inactive ingredients, clinical pharmacology, indications, usage, efficacy, contraindications, warnings, precautions and side effects.

34.    Defendants failed to fully, truthfully and accurately communicate the safety and efficacy of Plavix drug products and intentionally and fraudulently mislead the medical community, physicians, Plaintiff's physicians and Plaintiff about the risks associated with Plavix.

35.    Defendants fraudulently and aggressively promoted Plavix drug products to physicians for use in patients, such as Plaintiff, through medical journal advertisements, use of mass mailings, and direct communications, as well as other promotional materials including package inserts, physician desk reference, monographs and patient brochures, leaflets and hand outs as these materials  downplayed the significance of the adverse effects of Plavix.

36.    At all relevant times hereto, Defendants did not investigate the accuracy of the Plavix drug product labeling.

10

37.     Defendants were negligent in failing to report published articles and overwhelming scientific evidence of the true effects described above to the FDA, healthcare providers and patients, including Plaintiff.

38.     Defendants were required to report literature, papers; and, to undertake action to reflect truthful and accurate information in its labeling and promotional materials and failed to do so.

## IV. ALLEGATIONS

39.     Defendants are under a duty to ensure that their Plavix drug product labels are accurate.

40.     Defendants failed to ensure its Plavix warnings to the medical community were accurate and adequate and breached this duty.

41.     Defendants have a duty to conduct post market safety surveillance; to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Plavix drug products, the medical community, Plaintiff's physician, Plaintiff and other foreseeable users and failed to fulfill this duty.

42.     Defendants breached their duty to the medical community, Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of Plavix, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of their Plavix drug products.

43.     Defendants breached their duty to the medical community, Plaintiff's

physicians, Plaintiff, and other foreseeable users similarly situated because Defendants failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Plavix drug products to said persons and other foreseeable users.

44.    Defendants breached their duty to the medical community, Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report significant data concerning the lack of efficacy and side effects associated with Plavix.

45.    Defendants knew or should have known about the side effects, risks, misleading and inaccurate information contained in Plavix drug product labels and knowingly and intentionally withheld that information and or failed to report that information to the medical community, physicians, Plaintiff, plaintiff's physicians and other foreseeable users.

46.    At all times material hereto, Defendants were aware of the serious side effects described herein which were caused by Plavix drug products and failed to fulfill the obligation to report and divulge said side effects, and in doing so, mislead the medical community, physicians, Plaintiff's physicians, Plaintiff and other foreseeable users about the safety and efficacy of Plavix drug products.

47.    At all times material hereto, Defendants knew or should have known that physicians and plaintiff were unaware of or did not fully appreciate the seriousness of the risks associated with use of Plavix drug products and the lack of benefit.

12

48.     At the time Defendants made the above-described representations, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.

49.     Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' failure to correct false and misleading information it disseminated to physicians, which contained inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the efficacy, safety and potential side effects of Plavix.

50.     In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and malice and Plaintiff's are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.

51.     As a proximate result of the fraud and deceit of Defendants, Plaintiff sustained the injuries and damages as described in this Complaint.

52.     Defendants have an absolute duty to disclose the true facts regarding the safety of Plavix drug products to the medical community, to physicians and their patients, which they negligently and/or intentionally failed to do.

53.     Defendants have a duty to ensure that they had a reasonable basis for making the representations regarding the safety; efficacy, risks and benefits of Plavix were accurate which it negligently and/or intentionally failed to do.

54.     Plaintiff would not have suffered Plaintiff's injuries but for the above misrepresentations or omissions of Defendants.

55.     Defendants' misrepresentations or omissions were a cause in fact and a

13

proximate cause of Plaintiff's damages.

56.     A reasonably competent physician who prescribed Plavix and a reasonably competent Plaintiff who consumed Plavix would not realize its dangerous condition.

57.     The reasonably foreseeable use of Plavix drug products involved substantial dangers not readily recognizable by Plaintiff's physicians, who acted as ordinary, reasonable and prudent physicians would, when prescribing Plavix to ordinary, reasonable and prudent patients, like Plaintiff.

58. As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendants, Plaintiff, has:

> (a)     Suffered severe and permanent injuries, which she will be forced to endure for the remainder of her life;
>
> (b)     Suffered physical impairment and disfigurement; and
>
> (c)     Suffered physical pain and suffering;
>
> (d)     Suffered mental pain and suffering; and
>
> (e)     Suffered from loss of enjoyment of life; and
>
> (f)     Incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating Plaintiffs injuries; and
>
> (g)     Incurred attorney's fees and expenses of litigation related to this action.

59.     Defendants' actions were intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences and acted only out of self interest and personal gain and evidenced a specific intent to cause harm to Plaintiff.

60.     Plaintiff's serious and permanent injuries came about as a foreseeable and proximate result of the Defendants' dissemination of inaccurate, misleading, materially

incomplete, false, and otherwise inadequate information concerning the effects of exposure and ingestion of Plavix to the medical community, physicians, Plaintiff's physician, Plaintiff and other foreseeable users of Plavix.

61. Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages due to the injuries suffered caused by the ingestion of Defendants' Plavix drug products.

62. The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose, for eight years, the truth about the safety and efficacy of Plavix, to Plaintiff's physicians and/or Plaintiff, and misrepresenting Plavix as safe and efficacious for its intended use, actively concealed from said individuals the true risks associated with the use of Plavix drug products.

63. Plaintiff had no knowledge that Defendants was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, the Plaintiff could not have reasonably discovered the wrongdoing at any time prior to the commencement of this action.

64. Neither, Plaintiff, nor Plaintiff's physicians, could have possibly determined the nature, extent and identity of related health risks associated with Plavix, and reasonably relied on Defendants to disseminate truthful and accurate safety and efficacy information about its drug and warn of the side effects complained of herein.

65. Furthermore, Defendants are estopped from relying on any statute of

limitations because of their fraudulent concealment of the defective nature of Plavix. Defendants were under a duty to disclose the true character, quality, and nature of Plavix because this was non-public information over which the Defendants have, and continue to have, exclusive control, and because Defendants knew this information was not available to the Plaintiff or their physicians. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

## COUNT I

### STRICT PRODUCTS LIABILITY

### (Failure to Warn)

66. Plaintiffs incorporate by reference paragraphs 1 through 107 above, as if fully set forth.

67. At all relevant times the Defendants were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling Plavix.

68. Plavix is defective and unreasonably dangerous to consumers.

69. At all times mentioned in this Complaint Plavix was defective and/or unreasonably dangerous to Plaintiffs and other foreseeable users at the time it left the control of the Defendants.

70. Plavix is defective in its design or formulation in that when it left the hands of the Defendants, its foreseeable risks exceed the benefits associated with its design and formulation and/or it was more dangerous than an ordinary consumer would expect.

71. The foreseeable risks associated with the design or formulation of Plavix, include, but are not limited to, the fact that the design or formulation of Plavix is more

16

dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

72.     At all times material to this action, Plavix was expected to reach, and did reach consumers in the State of Arizona and throughout the United States, including the Plaintiff, without substantial change in the condition in which it was sold.

73.     Defendants, developed, marketed and distributed Plavix drug products to the general public even after learning of the design and manufacturing defects that threatened the intended use of Plavix.

74.     Defendants knew or should have known through testing, adverse event reporting, or otherwise, that Plavix created a high risk of bodily injury and serious harm.

75.     The dangerous propensities of Plavix drug products were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time said Defendants distributed, supplied, or sold Plavix, and not known to ordinary physicians who would be expected to prescribe Plavix for their patients.

76.     Plavix drug products, as distributed, were defective and unreasonably dangerous inasmuch as Plavix were not accompanied by warnings and instructions that were appropriate and adequate to render Plavix reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of Plavix.

77.     In order to advance Defendant's own pecuniary interests, Defendants intentionally proceeded with the manufacturing, the sale and distribution, and marketing of Plavix drug products with knowledge that consumers would be exposed to serious danger.

17

78.     At all times material to this action, Plavix was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a "defective" and "unreasonably dangerous" condition, at the time it was placed in the stream of commerce in ways that include, but are not limited to one or more of the particulars:

(a)     At the time Plavix left the control of the Defendants Plavix was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because Plavix breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiffs' physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiffs seek recovery herein.

(b)     Plavix drug products were not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time Plavix left the possession of the Defendants, and that such risks clearly outweighed the utility of Plavix therapy or its therapeutic benefits, and subjected Plaintiffs to the risk of suffering avoidable heart attacks, strokes, blood disorders, abnormal bleeding and even death in an unacceptably high number of its users;

(c)     At the time Plavix left the control of the Defendants Plavix possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time Plavix left the possession of the Defendants. Specifically, although the Defendants were well aware that Plavix products could potentially cause severe side effects.

(d)     The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicate sufficient information on the dangers and safe use of Plavix taking into account the characteristics of the Plavix, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases Plavix, such as the Plaintiffs.

(e)     Plavix manufactured and supplied by the Defendants were further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from Plavix drug products associated with the use as commonly prescribed, Defendants failed to promptly respond to and adequately warn about the risks of suffering avoidable heart attacks,

18

strokes, blood disorders, abnormal bleeding and death associated with the use of Plavix.

(f)      When placed in the stream of commerce of commerce, Plavix was defective in design and formulation, making the use of Plavix more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other similar drugs on the market including Aspirin;

(g)      Plavix was insufficiently tested.

79.      The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.

80.      The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of Plavix that caused the damages for which Plaintiff seeks recovery.

81.      The reasonably foreseeable use of Plavix involved substantial dangers not readily recognizable by the ordinary physician who prescribed Plavix or the patient, including Plaintiff, who consumed Plavix drug products.

82.      The Defendants knew that Plavix drug products were to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that Plavix were not properly prepared nor accompanied by adequate warnings of the dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

83.      Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of Defendants' Plavix drug products, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

84.      The above defects caused serious injuries to Plaintiff when Plavix was used in

19

its intended and foreseeable manner, and in the manner recommended by the Defendants and/or in a non-intended manner that was reasonably foreseeable.

85.     In addition, at the time that Plavix left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of Plavix.  These safer designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing Plavix's utility.

86.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered severe and irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

## COUNT II

### STRICT PRODUCT LIABILITY

### (Pursuant to Restatement Second of Torts 402(a) (1965)

87.     Plaintiff repeats, re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

88.     The Plavix manufactured and/or distributed and/or supplied by defendants was

defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceed the benefits associated with the design and formulation of the drug.

89.    Alternatively, the Plavix manufactured and/or distributed and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the manufactures and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of acute coronary syndrome, recent myocardial infarction, or established peripheral arterial disease.

90.    There existed, at all times material hereto, safer alternative medications.

91.    Defendant did not perform adequate testing upon PLAVIX.  Adequate testing would have revealed that PLAVIX causes serious adverse effects as described in this complaint with respect to which full and proper warnings accurately and fully reflecting symptoms, scope, and severity should have been made.

92.    The PLAVIX manufactured, designed, marketed, distributed and/or sold by defendants was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of PLAVIX and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

93.    Defendant did not warn the FDA of material facts regarding the safety and efficacy of PLAVIX, which facts defendant knew or should have known.

94.    The PLAVIX manufactured and/or distributed and/or supplied by defendant

21

was defective due to inadequate post-marketing warning or instructions, because, after the defendant knew or should have known of the risk of injury from PLAVIX, they failed to provide adequate warnings to users or consumer of PLAVIX and continued to promote PLAVIX.

95.     As a result of the defective condition of PLAVIX, Plaintiff has suffered damage and injury.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.     Plaintiff repeats, and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

97.     Through intentional, reckless, and extreme conduct Defendants knowingly denied Plaintiff adequate opportunity in measuring the level of risk related to Plavix drug products. By withholding information of known design and manufacturing defects and concealing those fatal problems, Defendants created a false sense of security for Plaintiff, who assumed the reasonable safety of Plavix.

98.     Defendants' conduct of intentional omission, concealment, and failure to warn of the design and manufacturing defects caused Plaintiff to suffer injuries, harm, and economic loss as alleged herein, including a permanent and substantial injuries, and expenses attributable to Plaintiff's condition.

99.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will

continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

100.    The injuries described herein entitle Plaintiff to compensatory damages and equitable and declaratory relief, along with all appropriate damages according to proof.

## COUNT IV

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs as if fully set forth herein.

102.    Defendants negligently failed to disclose or warn of the inherent risks and defects associated with the use of Plavix drug products.    Defendants negligently manufactured, distributed, marketed, and sold Plavix to Plaintiff, while knowingly concealing design, manufacturing and safety defects, and misrepresenting the risks of severe side effects, quality, safety, and efficacy of Plavix.

103.    Defendants' negligent conduct inflicted Plaintiff with severe emotional distress through Plaintiff's subsequent injuries resulting from the use of Plavix.

104.    Defendants' negligent conduct of willful omission and concealment of design, manufacturing and safety defects in order to induce ingestion of their Plavix drug products caused Plaintiff severe emotional distress.

105.    As a direct and proximate result of the wrongful acts of the Defendants,

23

Plaintiff developed severe side effects as described herein and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity;  incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

<u>**COUNT V**</u>

**COMMON LAW FRAUD**

106.    Plaintiff repeats, and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

107.    Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth.  Defendant had in its possession adverse drug event reports, drug studies and other documentation about PLAVIX and yet made the following misrepresentations:

    a.  Misrepresentations regarding the frequency of PLAVIX related adverse event reports or occurrences in the PLAVIX label, package, insert or PDR label;

    b.  Misrepresentations as to existence, occurrence and frequency of occurrences, severity and extent of the overall risks of PLAVIX;

    c.  Misrepresentations as to the efficacy of PLAVIX;

    d.  Misrepresentations as to the number of adverse events, deaths and birth defects, reported with the use of PLAVIX;

e.  Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of PLAVIX.

108.    Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiff's physicians, healthcare providers and consumers. Plaintiff did rely upon the misrepresentations that caused Plaintiff's injuries.

## COUNT VI

## NEGLIGENCE

109.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if fully set forth at length herein.

110.    Defendants owed Plaintiff legal duties in connection with its development, manufacture and distribution of PLAVIX. Defendants breached those duties, proximately causing Plaintiff's injuries. Specifically, Defendants failed to meet its duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling and warning of PLAVIX. Defendant is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice, including, but not limited to the following:

(a)    Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by ingesting PLAVIX;

(b)    Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by ingesting PLAVIX in unsafe doses;

(c)    Failure to use reasonable care in testing and inspecting PLAVIX so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

(d)    Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of PLAVIX;

(e)    Failure to use reasonable care in the process of manufacturing PLAVIX in a reasonably safe condition for the use for which it was intended;

25

(f)    Failure to use reasonable care in the manner and method of warning Plaintiff and Plaintiff's physicians as to the danger and risks of using PLAVIX in unsafe doses;

(g)    Such further acts and/or omissions that may be proven at trial.

111.   The above-described acts and/or omissions of Defendant were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

112.   Plaintiff repeat and re-allege the allegation of the prior paragraphs as if fully set forth herein.

113.   Defendant failed to communicate to Plaintiff and/or the general public that the ingestion of PLAVIX could cause serious injuries after it became aware of such risks. Instead, Defendant represented in its marketing that PLAVIX was safe and effective.

114.   Plaintiff brings this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

a.   Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about PLAVIX in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations.   Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b.   The above misrepresentations were made to Plaintiff, as well as the general public;

c.   Plaintiff and their healthcare providers justifiably relied on Defendant's misrepresentations; and

d.   Consequently, Plaintiff ingested PLAVIX to Plaintiff's   detriment.

Defendant's negligent misrepresentations proximately caused Plaintiff's injuries and monetary loss.

## COUNT VIII

### FRADULENT MISREPRESENTATION

115. Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

116. Defendant is engaged in the business of selling PLAVIX. By advertising, labels, or otherwise, Defendant has made to Plaintiff, and the public, a misrepresentation of a material fact concerning the character or quality of PLAVIX.

117. Plaintiff justifiably relied on Defendant's misrepresentation in purchasing PLAVIX. Plaintiff has suffered physical harm proximately caused by Defendant's misrepresentations regarding the character or quality of PLAVIX.

## COUNT IX

### EXPRESS WARRANTY

118. Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

119. Defendants is a merchant and/or seller of PLAVIX. Defendants sold Plavix to consumers, including Plaintiff, for the ordinary purpose for which consumers use such drugs. Defendants made representations to Plaintiff about the quality or characteristics of PLAVIX by affirmation of fact, promise and/or description. The representation by Defendants became part of the basis of the bargain between Defendants and Plaintiffs. PLAVIX did not comport with the representations made by Defendants in that it was not safe for the use for

27

which it was marketed. This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiff.

## COUNT X

## IMPLIED WARRANTY

120.    Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

### A. WARRANTY OF MERCHANTABILITY

121.    Defendants are merchant and/or sellers of PLAVIX.  PLAINTIFF purchased PLAVIX from Defendant and used PLAVIX for the ordinary purpose for which consumers use it.  At the time it was purchased by Plaintiff, PLAVIX was not fit for the ordinary purpose for which such drugs are used.  PLAVIX was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely.  Defendant's breach of its implied warranty of merchantability caused Plaintiff's injuries and monetary losses.

### B. WARRANTY OF FITNESS

122.    Defendants sold PLAVIX to Plaintiff with the knowledge that Plaintiff was purchasing PLAVIX for a particular purpose.  Further Defendants, knew, or should have known, that Plaintiff was relying on Defendant's skill or judgment to select goods fit for Plaintiff's purpose.

123.    Defendant delivered goods that were unfit for Plaintiff's particular purpose, and thus breached its implied warranty of fitness.  Defendant's failure to select and sell a product, which was reasonably safe for its intended use proximately, caused Plaintiff's

injuries and monetary losses.

**THEREFORE,** the Plaintiff demands judgment as to all counts in Plaintiff's favor and against DEFENDANTS in a sum in excess of the jurisdictional requirement of this court; for costs herein incurred; attorney's fees; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried to a jury.

**DATED** this 19th day of January, 2011.

By _____/s/Jeffrey B. Miller
       Jeffrey B. Miller, Esq.
       **MILLER WEBER KORY LLP**
       1112 East Washington Street
       Phoenix, Arizona 85034
       *Attorney for Plaintiff*

**ORIGINAL** of the foregoing electronically filed
@ https://efiling.clerkofcourt.maricopa.gov
this 19th day of January, 2011, with

Maricopa County Superior Court

By ____/s/Boo DeMarchi

29

MICHAEL K. JEANES
Clerk of the Superior Court
By Carrie Allen, Deputy
Date 01/13/2011 Time 16:15:30

| Description | Amount |
|---|---|
| ——— CASE# CV2011-000415 ——— | |
| CIVIL NEW COMPLAINT | 301.00 |
| | |
| TOTAL AMOUNT | 301.00 |
| Receipt# 21081703 | |

1  Jeffrey B. Miller #009771
jeff@mwkfirm.com
2  Gabriel V. Kory, # 022536
gabe@mwkfirm.com
3  **MILLER WEBER KORY LLP**
1112 East Washington Street
4  Phoenix, Arizona 85034
(602) 648-4045 (602) 340-1896 (fax)
5  *Attorneys for Plaintiff*

6  --and-

7  P. ANN TRANTHAM, ESQ., State Bar #30972
1901 Texas Street
8  Natchitoches, LA 71457
Telephone: (318) 352-5999
9  Email: patrantham@cp-tel.net
robertsalim@cp-tel.net
10
*Pro Hac to Be Submitted*
11

12

13          **IN SUPERIOR COURT FOR THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**
14

15  BEATRICE MILLS,                          )
)
16          Plaintiff,                        )
)
17  v.                                        )
)
18  BRISTOL-MYERS SQUIBB COMPANY,            )   CV2011-000415
SANOFI-AVENTIS U.S., L.L.C.,             )
19  SANOFI-AVENTIS, U.S., INC., and         )   Case No. _____
SANOFI-SYNTHELABO, INC.                  )
20                                            )
Defendants.                       )
21                                            )

22                          **COMPLAINT**

23
    **COMES NOW** Beatrice Mills, hereinafter referred to as the "Plaintiff" who files this
24
Complaint, complaining of and for her cause of action against, BRISTOL-MYERS SQUIBB
25
COMPANY, SANOFI-AVENTIS, U.S., L.L.C., SANOFI-AVENTIS, U.S., INC., AND
26
SANOFI-SYNTHELABO, INC., the Plaintiffs, by and through their undersigned attorney, for
27
their Complaint against Defendants, state and allege as follows:
28

1

This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, PLAVIX. Plaintiff's damages arose as a result of her ingestion of Defendants PLAVIX drug which was manufactured, marketed, distributed and sold by Defendants and/or Defendants representatives and placed in the stream of commerce in this state by Defendants.

## I.

## PARTIES

### PLAINTIFFS

1.      Plaintiff, Beatrice Mills, a natural person, is a citizen and resident of Fountain Hills, Maricopa County. Currently, Beatrice Mills resides at 16003 Burro Drive, Fountain Hills, Maricopa County, Arizona 85268, and was treated in said county for her injuries.   At all times relative to this complaint, Beatrice Mills, resided at 739 Las Colinas, Chandler, Maricopa County, New Mexico, 85249.

### DEFENDANTS

2.      Defendant, Bristol-Myers Squibb Company (hereinafter referred to as "BMS") is a pharmaceutical manufacturing and marketing company that partners with Sanofi-Aventis (now Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc.) to manufacture and market Plavix in the United States.   The headquarters for Bristol-Myers Squibb Company is located at 345 Park Avenue, New York, New York, 10145-0037.

3.      Defendant, Sanofi-Aventis U.S. L.L.C. is a subsidiary of the French pharmaceutical company, Sanofi-Aventis, which partners with Defendant Bristol-Myers Squibb Company to manufacture and market Plavix in the United States. The American base for Sanofi-Aventis U.S. L.L.C. is 400 Somerset Corporate Boulevard, SC4-310A, Bridgewater, New Jersey 08807-0912.

2

4.      Defendant, Sanofi-Aventis U.S., Inc., is a subsidiary of the French pharmaceutical company, Sanofi-Aventis, which partners with Defendant Bristol-Myers Squibb Company to manufacture and market Plavix in the United States. The American base for Sanofi-Aventis U.S., Inc., is 400 Somerset Corporate Boulevard, SC4-310A, Bridgewater, New Jersey, 08807-0912.

5.      Defendant, Sanofi-Synthelabo, Inc., is a Delaware corporation with its commercial headquarters at 90 Park Avenue, New York, New York, 10016. Sanofi-Synthelabo, Inc., did business as Sanofi Pharmaceuticals, Inc., and was the sponsor for Plavix application for Plavix. Sanofi-Synthelabo, Inc., is an affiliate of Sanofi-Aventis, Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc., that was instrumental in bringing Plavix to market.

6.      The three Sanofi Defendants—Sanofi-Aventis U.S. LLC, Sanofi-Aventis U.S. Inc., and Sanofi-Synthelabo, Inc., will be collectively referred to as "Sanofi" in this complaint.

**II.**

**JURISDICTION AND VENUE**

7.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants, because Defendants are present in the State of Arizona such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

8.      This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, Arizona's long-arm statute and the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

a.  Defendants transacted business in the State of Arizona;

b.  Defendants owned, used or possessed real estate situated in the State of Arizona;

c.  Defendants made or performed a contract or promise substantially connected within this state;

3

d. Defendants do business in and within Arizona; and,

e. Requiring Defendants to litigate this claim in Arizona does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

9. Defendants marketed, promoted, and sold Plavix throughout the United States, including Maricopa County, Arizona. Additionally, the Plaintiffs herein suffered injury from Plavix in Maricopa County, Arizona. Accordingly venue is proper under the Arizona Code of Civil Procedure.

### III.

### FACTS COMMON TO ALL COUNTS

10. This is an action for damages suffered by Plaintiff as a direct and proximate result of the Defendants' negligence and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and sale of Plavix.

11. At all material times, Plavix was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendants.

12. The Sanofi Defendants and BMS co-developed Plavix, applying in April 1997, for a rare *priority regulatory review*, by the U.S. Food and Drug Administration (FDA), which cleared the way for the Defendants to bring Plavix to market in November 1997.

13. The rush to obtain FDA approval of Plavix is indicative of Defendants' emphasis on marketing and profit making over patient safety.

14. Plavix was heavily marketed directly to consumers through television, magazine and Internet advertising. It was touted as a "super-aspirin," that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin while being safer and easier on a person's stomach than aspirin. Those assertions have proven to be false.

4

15.     The truth is that BMS and Sanofi always knew, or if they had paid attention to the findings of their own studies, should have known, that Plavix was not more efficacious than aspirin to prevent heart attacks and strokes.   More importantly though, Defendants knew or should have known that when taking Plavix, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder, or death far outweigh any potential benefit.

16.     Still, BMS and Sanofi continued to exaggerate the results of their own studies and made false statements in their advertising and promotional materials for the purpose of increasing their profits from Plavix sales.

17.     The profit at stake for the Defendants is enormous.   By way of illustration, in 2005, Plavix, was the sixth top selling drug in the United States and the Defendants enjoy annual sales of Plavix totaling $3,800,000,000.00 (3.8 billion dollars).

18.     BMS and Sanofi Defendants repeatedly thwarted the law and their duty to tell the public the truth about Plavix they were over-promoting for profit.   The FDA issued numerous letters insisting these Defendants stop their misleading, over-promotional practices.

19.     As examples, in 1998, the FDA requested the Defendants stop promoting Plavix for off-label use in patients receiving arterial stents.   In the same reprimand, the FDA noted that not only were the Defendants' marketing Plavix to physicians for a treatment for which it had not been approved, but also were recommending that a non-FDA approved dosage nearly four (4) times that of other applications be given.

20.     That same FDA warning criticized the Defendants' attempts at over-promotion of Plavix for unapproved use for lacking fair balance and failing to disclose any of the risks associated with its use.   In particular, the FDA criticized that the Defendants were claiming to physicians, in their promotional letter, that Plavix was safe for use with other drugs.   This, said the FDA, was overstating the safety profile of Plavix.   In particular, its safety when combined

5

with aspirin (known as "dual therapy") had not been established, yet Defendants were making a claim that the dual combination therapy of aspirin plus Plavix was safe. This claim has now been proven to be untrue in a recent study called CHARISMA (the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management and Avoidance Trial), which was reported in *The New England Journal of Medicine*, April 20, 2006.

21.     Again in 1998, the FDA issued a letter demanding the Defendants immediately cease distribution of advertising materials that claimed that Plavix has been proven to be more effective than aspirin. The FDA criticized this marketing ploy as an overstatement of efficacy that is lacking in fair balance and unsubstantiated.

22.     Undaunted, the Defendants were back in the business of hiding bad facts about their drug and fabricating more favorable information so they could sell large quantities of Plavix and make giant corporate profits. In 2001, the FDA was again forced to order Defendants to immediately cease distribution of promotional materials that made unsubstantiated claims about Plavix and was misleading. Specifically, the Defendants' promotional materials mislead consumers about their own study, called CAPRIE (Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events). While the Defendants' trumped-up promotional material claimed that Plavix was 19.2% better than aspirin, the actual findings of the CAPRIE study were that Plavix was not proven to be significantly more effective than aspirin-providing a 2.9% reduction in ischemic events versus a 3.47% reduction of ischemic events for the study participants who had been given aspirin. Defendants again claimed that the use of Plavix combined with aspirin was safe and effective, and again, the FDA forced Defendants to stop saying that because it had not been proven to be true.

23.     In addition to misinforming physicians and the public through their advertising to consumers and promotional materials for doctors, Defendants' drug representatives have also

6

misinformed physicians about the proper types of patients who should be given Plavix, the duration of its proper usage, and the applications for which it is safe and FDA approved.

24.     Defendants, through, their drug representatives, and their promotional efforts, have encouraged physicians to prescribe Plavix to a broad population of people who would receive the same therapeutic benefit from aspirin alone, (without risking death) and to use Plavix for unapproved applications.

25.     The result is that physicians are prescribing Plavix to people who could be cheaply and effectively protected against ischemic events by a simple aspirin, to pay approximately four dollars ($4.00) a day for a dose of Plavix.

26.     Defendants' nearly eight-year run of lying to physicians and to the public about the safety and efficacy of Plavix for the sole purpose of increasing corporate profits has now been uncovered by scientific studies that reveal that not only is Plavix not worth its high price—it is dangerous.

27.     The Chan study, written about in *The New England Journal of Medicine*, and named for the scientific researcher who conducted it, showed the fallacy of Defendants' assertion that Plavix is safer and more effective for patients who have a gastrointestinal intolerance to aspirin. The Chan study compared the effects of Aspirin and Plavix on patients who had previously had stomach ulcers that had healed. In that group, the incidence of recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group. Dr. Chan recommended that the prescribing guidelines for Plavix be changed so that the patients would not erroneously believe that Plavix is safer on the stomach than aspirin.

28.     The Chan study also uncovered the fact that an aspirin a day plus esomeprazole (the generic name for a cheap, over the counter proton pump inhibitor like Prilosec) is far more

7

cost effective for the consumer than paying for a four-dollar ($4.00) a day Plavix pill that greatly increases the risk of stomach bleeding.

29.     Most recently, the CHARISMA trial uncovered another truth about Plavix.   It found that Plavix plus aspirin (dual therapy) is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events.  But more importantly, it found that in patients who do not have peripheral arterial disease (PAD) or acute coronary syndrome (ACS), Plavix plus aspirin (dual therapy) poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death.  In other words, in those patients without ACS or PAD, dual therapy with aspirin and Plavix does more harm than good.

30.     Despite the growing body of scientific knowledge that the four-dollar ($4.00) Plavix pill was not much better than a four-cent-a-day aspirin, Defendants kept promoting it to the public and to physicians, using hyperbole and outright falsification in the process.

31.     Plaintiff, Beatrice Mills, was prescribed Plavix on or about January 7, 2009, by Dr. L. Xavier and continued on Plavix thereafter.   On January 12, 2009, Plaintiff began to hemorrhage and sought medical treatment at the Mercy Gilbert Hospital.    On January 20, 2009, Beatrice Mills was released from Mercy Gilbert Hospital.  Subsequently, Beatrice Mills was re-admitted to Mercy Gilbert Hospital, on January 25, 2009, for continual problems relating to clotting and bleeding.  Beatrice Mills was finally discharged from the hospital on January 30, 2009.

32.     The label for Plavix drug products, known as the "Package Insert" was developed by the Defendants and accompanied all Plavix prescription drug products and/or samples and was published in the Physician's Desk Reference.

8

33. Drug labeling is to include accurate information concerning a drug's active and inactive ingredients, clinical pharmacology, indications, usage, efficacy, contraindications, warnings, precautions and side effects.

34. Defendants failed to fully, truthfully and accurately communicate the safety and efficacy of Plavix drug products and intentionally and fraudulently mislead the medical community, physicians, Plaintiff's physicians and Plaintiff about the risks associated with Plavix.

35. Defendants fraudulently and aggressively promoted Plavix drug products to physicians for use in patients, such as Plaintiff, through medical journal advertisements, use of mass mailings, and direct communications, as well as other promotional materials including package inserts, physician desk reference, monographs and patient brochures, leaflets and hand outs as these materials downplayed the significance of the adverse effects of Plavix.

36. At all relevant times hereto, Defendants did not investigate the accuracy of the Plavix drug product labeling.

37. Defendants were negligent in failing to report published articles and overwhelming scientific evidence of the true effects described above to the FDA, healthcare providers and patients, including Plaintiff.

38. Defendants were required to report literature, papers; and, to undertake action to reflect truthful and accurate information in its labeling and promotional materials and failed to do so.

## IV. ALLEGATIONS

39. Defendants are under a duty to ensure that their Plavix drug product labels are accurate.

40. Defendants failed to ensure its Plavix warnings to the medical community were accurate and adequate and breached this duty.

9

41.    Defendants have a duty to conduct post market safety surveillance; to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Plavix drug products, the medical community, Plaintiff's physician, Plaintiff and other foreseeable users and failed to fulfill this duty.

42.    Defendants breached their duty to the medical community, Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of Plavix, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of their Plavix drug products.

43.    Defendants breached their duty to the medical community, Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated because Defendants failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Plavix drug products to said persons and other foreseeable users.

44.    Defendants breached their duty to the medical community, Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report significant data concerning the lack of efficacy and side effects associated with Plavix.

45.    Defendants knew or should have known about the side effects, risks, misleading and inaccurate information contained in Plavix drug product labels and knowingly and intentionally withheld that information and or failed to report that information to the medical community, physicians, Plaintiff, plaintiff's physicians and other foreseeable users.

46.    At all times material hereto, Defendants were aware of the serious side effects described herein which were caused by Plavix drug products and failed to fulfill the obligation to report and divulge said side effects, and in doing so, mislead the medical community, physicians,

10

Plaintiff's physicians, Plaintiff and other foreseeable users about the safety and efficacy of Plavix drug products.

47. At all times material hereto, Defendants knew or should have known that physicians and plaintiff were unaware of or did not fully appreciate the seriousness of the risks associated with use of Plavix drug products and the lack of benefit.

48. At the time Defendants made the above-described representations, Plaintiff and Plaintiff's physicians were ignorant of the falsity of the representations and reasonably believed them to be true.

49. Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' failure to correct false and misleading information it disseminated to physicians, which contained inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the efficacy, safety and potential side effects of Plavix.

50. In doing the acts alleged in this Complaint, Defendants acted with oppression, fraud, and malice and Plaintiff's are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.

51. As a proximate result of the fraud and deceit of Defendants, Plaintiff sustained the injuries and damages as described in this Complaint.

52. Defendants have an absolute duty to disclose the true facts regarding the safety of Plavix drug products to the medical community, to physicians and their patients, which they negligently and/or intentionally failed to do.

53. Defendants have a duty to ensure that they had a reasonable basis for making the representations regarding the safety; efficacy, risks and benefits of Plavix were accurate which it negligently and/or intentionally failed to do.

11

54. Plaintiff would not have suffered Plaintiff's injuries but for the above misrepresentations or omissions of Defendants.

55. Defendants' misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiff's damages.

56. A reasonably competent physician who prescribed Plavix and a reasonably competent Plaintiff who consumed Plavix would not realize its dangerous condition.

57. The reasonably foreseeable use of Plavix drug products involved substantial dangers not readily recognizable by Plaintiff's physicians, who acted as ordinary, reasonable and prudent physicians would, when prescribing Plavix to ordinary, reasonable and prudent patients, like Plaintiff.

58. As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendants, Plaintiff, has:

    (a) Suffered severe and permanent injuries, which she will be forced to endure for the remainder of her life;

    (b) Suffered physical impairment and disfigurement; and

    (c) Suffered physical pain and suffering;

    (d) Suffered mental pain and suffering; and

    (e) Suffered from loss of enjoyment of life; and

    (f) Incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating Plaintiffs injuries; and

    (g) Incurred attorney's fees and expenses of litigation related to this action.

59. Defendants' actions were intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences and acted only out of self interest and personal gain and evidenced a specific intent to cause harm to Plaintiff.

60. Plaintiff's serious and permanent injuries came about as a foreseeable and

proximate result of the Defendants' dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the effects of exposure and ingestion of Plavix to the medical community, physicians, Plaintiff's physician, Plaintiff and other foreseeable users of Plavix.

61.     Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages due to the injuries suffered caused by the ingestion of Defendants' Plavix drug products.

62.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose, for eight years, the truth about the safety and efficacy of Plavix, to Plaintiff's physicians and/or Plaintiff, and misrepresenting Plavix as safe and efficacious for its intended use, actively concealed from said individuals the true risks associated with the use of Plavix drug products.

63.     Plaintiff had no knowledge that Defendants was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, the Plaintiff could not have reasonably discovered the wrongdoing at any time prior to the commencement of this action.

64.     Neither, Plaintiff, nor Plaintiff's physicians, could have possibly determined the nature, extent and identity of related health risks associated with Plavix, and reasonably relied on Defendants to disseminate truthful and accurate safety and efficacy information about its drug and warn of the side effects complained of herein.

65.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of Plavix.      Defendants were under a duty to disclose the true character, quality, and nature of Plavix because this was non-

13

public information over which the Defendants have, and continue to have, exclusive control, and because Defendants knew this information was not available to the Plaintiff or their physicians. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

**COUNT I**

**STRICT PRODUCTS LIABILITY**

**(Failure to Warn)**

66.  Plaintiffs incorporate by reference paragraphs 1 through 107 above, as if fully set forth.

67.  At all relevant times the Defendants were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling Plavix.

68.  Plavix is defective and unreasonably dangerous to consumers.

69.  At all times mentioned in this Complaint Plavix was defective and/or unreasonably dangerous to Plaintiffs and other foreseeable users at the time it left the control of the Defendants.

70.  Plavix is defective in its design or formulation in that when it left the hands of the Defendants, its foreseeable risks exceed the benefits associated with its design and formulation and/or it was more dangerous than an ordinary consumer would expect.

71.  The foreseeable risks associated with the design or formulation of Plavix, include, but are not limited to, the fact that the design or formulation of Plavix is more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

72.  At all times material to this action, Plavix was expected to reach, and did reach consumers in the State of Arizona and throughout the United States, including the Plaintiff, without substantial change in the condition in which it was sold.

14

73.     Defendants, developed, marketed and distributed Plavix drug products to the general public even after learning of the design and manufacturing defects that threatened the intended use of Plavix.

74.     Defendants knew or should have known through testing, adverse event reporting, or otherwise, that Plavix created a high risk of bodily injury and serious harm.

75.     The dangerous propensities of Plavix drug products were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time said Defendants distributed, supplied, or sold Plavix, and not known to ordinary physicians who would be expected to prescribe Plavix for their patients.

76.     Plavix drug products, as distributed, were defective and unreasonably dangerous inasmuch as Plavix were not accompanied by warnings and instructions that were appropriate and adequate to render Plavix reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of Plavix.

77.     In order to advance Defendant's own pecuniary interests, Defendants intentionally proceeded with the manufacturing, the sale and distribution, and marketing of Plavix drug products with knowledge that consumers would be exposed to serious danger.

78.     At all times material to this action, Plavix was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a "defective" and "unreasonably dangerous" condition, at the time it was placed in the stream of commerce in ways that include, but are not limited to one or more of the particulars:

> (a)     At the time Plavix left the control of the Defendants Plavix was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because Plavix breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiffs' physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiffs seek recovery herein.

(b) Plavix drug products were not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time Plavix left the possession of the Defendants, and that such risks clearly outweighed the utility of Plavix therapy or its therapeutic benefits, and subjected Plaintiffs to the risk of suffering avoidable heart attacks, strokes, blood disorders, abnormal bleeding and even death in an unacceptably high number of its users;

(c) At the time Plavix left the control of the Defendants Plavix possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time Plavix left the possession of the Defendants. Specifically, although the Defendants were well aware that Plavix products could potentially cause severe side effects.

(d) The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger. There were no warnings or instructions that communicate sufficient information on the dangers and safe use of Plavix taking into account the characteristics of the Plavix, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases Plavix, such as the Plaintiffs.

(e) Plavix manufactured and supplied by the Defendants were further defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from Plavix drug products associated with the use as commonly prescribed, Defendants failed to promptly respond to and adequately warn about the risks of suffering avoidable heart attacks, strokes, blood disorders, abnormal bleeding and death associated with the use of Plavix.

(f) When placed in the stream of commerce of commerce, Plavix was defective in design and formulation, making the use of Plavix more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other similar drugs on the market including Aspirin;

(g) Plavix was insufficiently tested.

79. The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which Plaintiff seeks recovery.

80. The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of Plavix that caused the damages for which Plaintiff seeks recovery.

81. The reasonably foreseeable use of Plavix involved substantial dangers not readily recognizable by the ordinary physician who prescribed Plavix or the patient, including Plaintiff, who

16

consumed Plavix drug products.

82. The Defendants knew that Plavix drug products were to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that Plavix were not properly prepared nor accompanied by adequate warnings of the dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

83. Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of Defendants' Plavix drug products, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

84. The above defects caused serious injuries to Plaintiff when Plavix was used in its intended and foreseeable manner, and in the manner recommended by the Defendants and/or in a non-intended manner that was reasonably foreseeable.

85. In addition, at the time that Plavix left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function of Plavix. These safer designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing Plavix's utility.

86. As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered severe and irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the

17

evidence.

## COUNT II

## STRICT PRODUCT LIABILITY

### (Pursuant to Restatement Second of Torts 402(a) (1965)

87.     Plaintiff repeats, re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

88.     The Plavix manufactured and/or distributed and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceed the benefits associated with the design and formulation of the drug.

89.     Alternatively, the Plavix manufactured and/or distributed and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the manufactures and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of acute coronary syndrome, recent myocardial infarction, or established peripheral arterial disease.

90.     There existed, at all times material hereto, safer alternative medications.

91.     Defendant did not perform adequate testing upon PLAVIX.  Adequate testing would have revealed that PLAVIX causes serious adverse effects as described in this complaint with respect to which full and proper warnings accurately and fully reflecting symptoms, scope, and severity should have been made.

92.     The PLAVIX manufactured, designed, marketed, distributed and/or sold by defendants was unaccompanied by proper and adequate warnings regarding adverse effects

18

associated with the use of PLAVIX and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

93. Defendant did not warn the FDA of material facts regarding the safety and efficacy of PLAVIX, which facts defendant knew or should have known.

94. The PLAVIX manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instructions, because, after the defendant knew or should have known of the risk of injury from PLAVIX, they failed to provide adequate warnings to users or consumer of PLAVIX and continued to promote PLAVIX.

95. As a result of the defective condition of PLAVIX, Plaintiff has suffered damage and injury.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96. Plaintiff repeats, and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

97. Through intentional, reckless, and extreme conduct Defendants knowingly denied Plaintiff adequate opportunity in measuring the level of risk related to Plavix drug products. By withholding information of known design and manufacturing defects and concealing those fatal problems, Defendants created a false sense of security for Plaintiff, who assumed the reasonable safety of Plavix.

98. Defendants' conduct of intentional omission, concealment, and failure to warn of the design and manufacturing defects caused Plaintiff to suffer injuries, harm, and economic loss as alleged herein, including a permanent and substantial injuries, and expenses attributable to Plaintiff's condition.

19

99.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

100.    The injuries described herein entitle Plaintiff to compensatory damages and equitable and declaratory relief, along with all appropriate damages according to proof.

## COUNT IV

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs as if fully set forth herein.

102.    Defendants negligently failed to disclose or warn of the inherent risks and defects associated with the use of Plavix drug products. Defendants negligently manufactured, distributed, marketed, and sold Plavix to Plaintiff, while knowingly concealing design, manufacturing and safety defects, and misrepresenting the risks of severe side effects, quality, safety, and efficacy of Plavix.

103.    Defendants' negligent conduct inflicted Plaintiff with severe emotional distress through Plaintiff's subsequent injuries resulting from the use of Plavix.

104.    Defendants' negligent conduct of willful omission and concealment of design, manufacturing and safety defects in order to induce ingestion of their Plavix drug products caused Plaintiff severe emotional distress.

105.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein and suffered irreparable bodily injury; suffered and

20

will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

## COUNT V

## COMMON LAW FRAUD

106.  Plaintiff repeats, and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

107.  Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth. Defendant had in its possession adverse drug event reports, drug studies and other documentation about PLAVIX and yet made the following misrepresentations:

   a.  Misrepresentations regarding the frequency of PLAVIX related adverse event reports or occurrences in the PLAVIX label, package, insert or PDR label;

   b.  Misrepresentations as to existence, occurrence and frequency of occurrences, severity and extent of the overall risks of PLAVIX;

   c.  Misrepresentations as to the efficacy of PLAVIX;

   d.  Misrepresentations as to the number of adverse events, deaths and birth defects, reported with the use of PLAVIX;

   e.  Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of PLAVIX.

108.  Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiff's physicians, healthcare providers and consumers. Plaintiff did rely upon the

misrepresentations that caused Plaintiff's injuries.

**COUNT VI**

**NEGLIGENCE**

109.     Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if fully set forth at length herein.

110.     Defendants owed Plaintiff legal duties in connection with its development, manufacture and distribution of PLAVIX. Defendants breached those duties, proximately causing Plaintiff's injuries. Specifically, Defendants failed to meet its duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling and warning of PLAVIX. Defendant is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice, including, but not limited to the following:

(a)     Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by ingesting PLAVIX;

(b)     Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by ingesting PLAVIX in unsafe doses;

(c)     Failure to use reasonable care in testing and inspecting PLAVIX so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

(d)     Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of PLAVIX;

(e)     Failure to use reasonable care in the process of manufacturing PLAVIX in a reasonably safe condition for the use for which it was intended;

(f)     Failure to use reasonable care in the manner and method of warning Plaintiff and Plaintiff's physicians as to the danger and risks of using PLAVIX in unsafe doses;

(g)     Such further acts and/or omissions that may be proven at trial.

111.     The above-described acts and/or omissions of Defendant were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff.

**COUNT VII**

## NEGLIGENT MISREPRESENTATION

112.    Plaintiff repeat and re-allege the allegation of the prior paragraphs as if fully set forth herein.

113.    Defendant failed to communicate to Plaintiff and/or the general public that the ingestion of PLAVIX could cause serious injuries after it became aware of such risks. Instead, Defendant represented in its marketing that PLAVIX was safe and effective.

114.    Plaintiff brings this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

a.  Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about PLAVIX in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b.  The above misrepresentations were made to Plaintiff, as well as the general public;

c.  Plaintiff and their healthcare providers justifiably relied on Defendant's misrepresentations; and

d.  Consequently, Plaintiff ingested PLAVIX to Plaintiff's detriment. Defendant's negligent misrepresentations proximately caused Plaintiff's injuries and monetary loss.

## COUNT VIII

## FRADULENT MISREPRESENTATION

115.    Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

116.    Defendant is engaged in the business of selling PLAVIX. By advertising, labels, or otherwise, Defendant has made to Plaintiff, and the public, a misrepresentation of a material fact concerning the character or quality of PLAVIX.

117.    Plaintiff justifiably relied on Defendant's misrepresentation in purchasing PLAVIX.

23

Plaintiff has suffered physical harm proximately caused by Defendant's misrepresentations regarding the character or quality of PLAVIX.

## COUNT IX

### EXPRESS WARRANTY

118.    Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

119.    Defendants is a merchant and/or seller of PLAVIX.  Defendants sold Plavix to consumers, including Plaintiff, for the ordinary purpose for which consumers use such drugs. Defendants made representations to Plaintiff about the quality or characteristics of PLAVIX by affirmation of fact, promise and/or description.  The representation by Defendants became part of the basis of the bargain between Defendants and Plaintiffs.  PLAVIX did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed. This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiff.

## COUNT X

### IMPLIED WARRANTY

120.    Plaintiff repeats and re-alleges the allegation of the prior paragraphs as if fully set forth herein.

### A. WARRANTY OF MERCHANTABILITY

121.    Defendants are merchant and/or sellers of PLAVIX.  PLAINTIFF purchased PLAVIX from Defendant and used PLAVIX for the ordinary purpose for which consumers use it. At the time it was purchased by Plaintiff, PLAVIX was not fit for the ordinary purpose for which such drugs are used.  PLAVIX was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely.

24

1    Defendant's breach of its implied warranty of merchantability caused Plaintiff's injuries and

2    monetary losses.

3    **B. WARRANTY OF FITNESS**

4

5    122.   Defendants sold PLAVIX to Plaintiff with the knowledge that Plaintiff was

6    purchasing PLAVIX for a particular purpose. Further Defendants, knew, or should have known,

7    that Plaintiff was relying on Defendant's skill or judgment to select goods fit for Plaintiff's

8    purpose.

9    123.   Defendant delivered goods that were unfit for Plaintiff's particular purpose, and

10    thus breached its implied warranty of fitness. Defendant's failure to select and sell a product,

11    which was reasonably safe for its intended use proximately, caused Plaintiff's injuries and

12    monetary losses.

13

14    **THEREFORE,** the Plaintiff demands judgment as to all counts in Plaintiff's favor and

15    against DEFENDANTS in a sum in excess of the jurisdictional requirement of this court; for costs

16    herein incurred; attorney's fees; for such other and further relief as this Court deems just and proper;

17    and demands that the issues herein contained be tried to a jury.

18    **DATED** this 13th day of January, 2011.

19

20

21    By:_____

22           Jeffrey B. Miller, Esq.
             Gabriel V. Kory, Esq.

23          **MILLER WEBER KORY LLP**
          1112 East Washington Street

24          Phoenix, Arizona 85034
          *Attorney for Plaintiff*

25

26    **ORIGINAL** of the foregoing filed with the
    Clerk of Court this 13th day of January, 2011.

27

28    By:_____

Jeffrey B. Miller #009771
jeff@mwkfirm.com
Gabriel V. Kory, # 022536
gabe@mwkfirm.com
**MILLER WEBER KORY LLP**
1112 East Washington Street
Phoenix, Arizona 85034
(602) 648-4045 (602) 340-1896 (fax)
*Attorneys for Plaintiff*

--and--

P. ANN TRANTHAM, ESQ., State Bar #30972
1901 Texas Street
Natchitoches, LA 71457
Telephone: (318) 352-5999
Email: patrantham@cp-tel.net
robertsalim@cp-tel.net

*Pro Hac to Be Submitted*

MICHAEL K JEANES, CLERK
BY _____ DEP
FILED
11 JAN 13 PH 4:08

## IN SUPERIOR COURT FOR THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BEATRICE MILLS, | ) Case No. CV2011-000415 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BRISTOL-MYERS SQUIBB COMPANY, | ) **CERTIFICATE REGARDING** |
| SANOFI-AVENTIS U.S., L.L.C., | ) **EXPERT TESTIMONY** |
| SANOFI-AVENTIS, U.S., INC., and | ) |
| SANOFI-SYNTHELABO, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Jeffrey B. Miller, the attorney for Plaintiff herein, hereby certifies that expert opinion testimony is necessary to prove the standard of care or liability with respect to Plaintiff's claims against defendants, BRISTOL-MYERS SQUIBB COMPANY, SANOFI-AVENTIS, U.S., L.L.C., SANOFI-AVENTIS, U.S., INC., AND SANOFI-SYNTHELABO, INC., and/or its agents, servants and/or employees.

1

1

2        **DATED** this 13th day of January, 2011.

3

4                        By:

5                          Jeffrey B. Miller, Esq.

6                          Gabriel V. Kory, Esq.
                            **MILLER WEBER KORY LLP**

7                          1112 East Washington Street
                          Phoenix, Arizona 85034

8                          *Attorney for Plaintiff*

9
    **ORIGINAL** of the foregoing filed with the

10  Clerk of Court this 13th day of January, 2011.

11  By :

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

MICHAEL K. JEANES, CLERK
BY [signature] DEP
FILED
11 JAN 13 PM 4:09

1   Jeffrey B. Miller #009771
    jeff@mwkfirm.com
2   Gabriel V. Kory, # 022536
    gabe@mwkfirm.com
3   **MILLER WEBER KORY LLP**
    1112 East Washington Street
4   Phoenix, Arizona 85034
    (602) 648-4045 (602) 340-1896 (fax)
5   *Attorneys for Plaintiff*

6   --and--

7   P. ANN TRANTHAM, ESQ., State Bar #30972
    1901 Texas Street
8   Natchitoches, LA 71457
    Telephone: (318) 352-5999
9   Email: patrantham@cp-tel.net
           robertsalim@cp-tel.net
10

    *Pro Hac to Be Submitted*
11

12

13          **IN SUPERIOR COURT FOR THE STATE OF ARIZONA**
            **IN AND FOR THE COUNTY OF MARICOPA**
14

15  BEATRICE MILLS,                          )   CV 2011
                                             )   Case No. 011-000415
16              Plaintiff,                    )
                                             )
17  v.                                       )
                                             )   **CERTIFICATE REGARDING**
18  BRISTOL-MYERS SQUIBB COMPANY,            )   **COMPULSORY ARBITRATION**
    SANOFI-AVENTIS U.S., L.L.C.,             )
19  SANOFI-AVENTIS, U.S., INC., and          )
    SANOFI-SYNTHELABO, INC.                  )
20                                           )
                Defendants.                  )
21                                           )

22          The undersigned certifies that he knows the dollar limits and any other limitations set

23  forth by the Local Rules of Practice for Maricopa County Superior Court, and further certifies

24  that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the

25  Arizona Rules of Civil Procedure.

26

27

28

                                             1

1  **DATED** this 13th day of January, 2011.

2

3                                    By: _____

4                                         Jeffrey B. Miller, Esq.
                                          Gabriel V. Kory, Esq.
5                                         **MILLER WEBER KORY LLP**
                                          1112 East Washington Street
6                                         Phoenix, Arizona 85034
                                          *Attorney for Plaintiff*
7

8  **ORIGINAL** of the foregoing filed with the
   Clerk of Court this 13th day of January, 2011.
9

10 By : _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Office Distribution | | |
|---|---|---|

**SUPERIOR COURT OF ARIZONA**
**MARICOPA COUNTY**

**FILED**
4/20/2011
Clerk of the Court

Ct. Admin
Deputy

4/16/2011

**COURT ADMINISTRATION**

**Case Number:** CV2011-000415

**Beatrice Mills**

**V.**

**Bristol-Myers Squibb Company**

The Judge assigned to this action is the Honorable Sam J Myers

NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 1/13/2011 is subject to dismissal pursuant to Rule 4 (i), Arizona Rules of Civil Procedure. The deadline for completing service is 5/13/2011. If no judge has extended time for completing service and no defendants have been served by this date, this case will be dismissed.

Superior Court of Maricopa County - integrated Court Information System
## Endorsee Party Listing
Case Number: CV2011-000415

| Party Name | Attorney Name | |
|------------|---------------|---|
| Beatrice Mills | Gabriel V Kory | Bar ID: 022536 |

MICHAEL K. JEANES, CLERK
RECEIVED CCC #5
DOCUMENT DEPOSITORY

11 MAY -9 PM 4 16

FILED
BY _C Mlln_ , DEP.

1  Jeffrey B. Miller #009771
   jeff@mwkfirm.com
2  Gabriel V. Kory, # 022536
   gabe@mwkfirm.com
3  **MILLER WEBER KORY LLP**
   1112 East Washington Street
4  Phoenix, Arizona 85034
   (602) 648-4045 (602) 340-1896 (fax)
5  *Attorneys for Plaintiff*

6  --and--

7  P. Ann Trantham, Esq., State Bar #30972
   patrantham@cp-tel.net
8  1901 Texas Street
   Natchitoches, LA 71457
9  (318) 352-5999

10

11           **IN SUPERIOR COURT FOR THE STATE OF ARIZONA**

12            **IN AND FOR THE COUNTY OF MARICOPA**

13  BEATRICE MILLS,                          )
                                             )   Case No. CV 2011-000415
14            Plaintiff,                      )
                                             )
15  v.                                        )   **MOTION AND CONSENT OF**
                                             )   **LOCAL COUNSEL FOR PRO**
16  BRISTOL-MYERS SQUIBB COMPANY,            )   **HAC VICE ADMISSION OF**
    SANOFI-AVENTIS U.S., L.L.C.,             )   **PATTY ANN TRANTHAM**
17  SANOFI-AVENTIS, U.S., INC., and          )
    SANOFI-SYNTHELABO, INC.                  )
18                                            )   *(Assigned to the*
            Defendants.                       )   *Honorable Sam Myers)*
19                                            )
                                             )
20                                            )

21

22           Jeffrey B. Miller, attorney for Plaintiff herein, pursuant to Rules 33 (c) and 34 (d),

23  Rules of Supreme Court, moves this Court to admit Patty Ann Trantham as counsel pro

24  hac vice in this action.

25           Pursuant to Rule 34(b), Rules of the Supreme Court, the following exhibits are

26  attached hereto:

27           A.      the Original Verified Application for Patty Ann Trantham;

28

1

B.     the Original Certificates of Good Standing for Patty Ann Trantham;

C.     the State Bar of Arizona Notice of Receipt for Patty Ann Trantham;

The filing fees as required by Rule 34(d) have been submitted to the State Bar of Arizona. I hereby agree to serve as designated local counsel for the subject case. A proposed Order admitting Patty Ann Trantham accompanies this Motion.

**RESPECTFULLY SUBMITTED** this 9th day of May, 2011.

**MILLER WEBER KORY LLP**

By _____
Jeffrey B. Miller, Esq.
1112 East Washington Street
Phoenix, Arizona 85034
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing filed with the Clerk of the Court
this 9th day of May, 2011, with a copy for delivery to:

The Honorable Sam Myers
**MARICOPA COUNTY SUPERIOR COURT**
Central Court Building - #7
201 West Jefferson
Phoenix, Arizona 85003-2243

**COPY** of the foregoing mailed
this 9th day of May, 2011, to:

P. Ann Trantham, Esq.
1901 Texas Street
Natchitoches, LA 71457

By _____

2





**STATE BAR OF ARIZONA**

<table>
<tr><td>For Official Use Only</td></tr>
<tr><td>App# 10006140</td></tr>
<tr><td>Bar Number# P179482</td></tr>
</table>

Attn: Pro Hac Vice Dept
PO Box 53099
Phoenix, AZ 85072-3099
Phone: 602-340-7239

## Application for Appearance Pro Hac Vice

**PART I: Applicant Information**

Name of Applicant: Patty Ann Trantham

Firm/Company Name: Law Office of Robert L. Salim

Office Address: 3100 Richmond Ave., Suite 480, Houston, TX 77098

Telephone: 713-528-0366 Fax: Email Address: patrantham@gmail.com

Residence Address: 1716 Washington Ave., Suite H, Houston, TX 77007

Title of cause or case where applicant seeks to appear: Beatrice Mills v. Bristol-Myers Squibb et. al.

Docket Number: CV2011-000415

Court, Board, or Administrative Agency: Superior Court of Arizona, County of Maricopa

Party on whose behalf applicant seeks to appear: Beatrice Mills

### Pursuant to Arizona Supreme Court Rule 38(i)(3), the applicant shall complete the information below:

| Courts to Which Applicant Has Been Admitted: *(Attach additional pages if needed)* | Date of Admission: | Bar Number: |
|---|---|---|
| United States Court of Appeal, Fifth Circuit | December 2009 | |
| Supreme Court of Texas | May 2009 | 24067910 |
| Supreme Court of Louisiana | April 2007 | 30972 |
| | | |

☑ Applicant is a member in good standing in such courts.

☑ Applicant is not currently disbarred or suspended in any court.

Applicant ☐ is / ☑ is not **(select one)** currently subject to any pending disciplinary proceeding or investigation by any court, agency or organization authorized to discipline attorneys at law.

In the preceding three (3) years, applicant has filed applications to appear as counsel under AZ ST S.Ct., Rule 38(a) in the following:

| Title of Matter: | Docket #: | Court or Agency: | App Granted? (Y/N) |
|---|---|---|---|
| Villafane v. Teva Pharmaceuticals | CV-10-1099-PHX-ROS | USDC District of Arizona | Y |
| | | | |
| | | | |

This case or cause ☐ is / ☑ is not **(select one)** a related or consolidated matter for which applicant has previously applied to appear pro hac vice in Arizona. If this matter is a related or consolidated with any previous application, Applicant certifies that he/she will review and comply with appropriate rules of procedure as required in the underlying cause.
If applicable, please provide related or consolidated matter application or docket#

RECEIVED
MAY 2 2011
By

Revised 01/15/09

Page 2

**PART II: Local Counsel Information**
Name of Arizona Local Counsel: Jeffrey B. Miller_____

State Bar of Arizona Number: 009771_____

Address: 1112 East Washington St., Phoenix, AZ 85034_____

Telephone: 602-253-3554_____ Fax: 602-340-1896_____ Email Address: jeff@rmgmo.com_____

☑ Local Counsel is a member in good standing.

☑ Local Counsel associating with a nonresident attorney in a particular cause shall accept joint responsibility with the nonresident attorney to the client, to opposing parties and counsel, and to court, board, or administrative agency in that particular cause.

**PART III: Parties and Certification**
Name(s) of each party in this cause and name and address of all counsel of record:

| Party: | Counsel of Record: | Address: |
|---|---|---|
| Beatrice Mills | Jeffrey B. Miller | 1112 E. Washington St, Phoenix, AZ |
| | | |
| | | |
| | | |

☑ Applicant is including with this application a nonrefundable application fee, payable to the State Bar of Arizona, in the amount of $460.00. Fifteen percent of the non-refundable application fee paid pursuant to this section shall be deposited into a civil legal services fund to be distributed by the Arizona Foundation for Legal Services and Education entirely to approved legal services organizations, as that term is defined in subparagraph (f) of this rule.

☑ Applicant is furnishing a certificate from the state bar or from the clerk of the highest admitting court of each state, territory, or insular possession of the United States in which the nonresident attorney has been admitted to practice law certifying the nonresident attorney's date of admission to such jurisdiction and the current status of the nonresident attorney's membership or eligibility to practice therein. The certificate furnished shall be no more than forty-five (45) days old.

Applicant certifies the following:
1. Applicant shall be subject to the jurisdiction of the courts and agencies of the State of Arizona and to the State Bar of Arizona with respect to the law of this state governing the conduct of attorneys to the same extent as an active member of the State Bar of Arizona, as provided in Rule 46(b) Rules of the Supreme Court.
2. Applicant will review and comply with appropriate rules of procedure as required in the underlying cause.
3. Applicant understands and shall comply with the standards of conduct required of members of the State Bar of Arizona.

**Verification**

STATE OF  _Louisiana_                    )
County of _Natchitoches_               ) ss.

I, _Patty Ann Trantham_____, swear that all statements in the application are true, correct and complete to the best of my knowledge and belief.

Dated: _April 28, 2011_          Applicant's Signature: _____

SUBSCRIBED AND SWORN TO before me this _28th_ day of _April_, 20_11_, by

_Patty Ann Trantham_.
Name of Applicant

_____
Notary Public

Revised 01/15/09

Case 2:11-cv-00968-FJM   Document 1-1   Filed 09/16/13   Page 69 of 72



# United States of America

## State of Louisiana

# Supreme Court of the State of Louisiana

━━━━━━━

I, JOHN TARLTON OLIVIER, Clerk of the Supreme Court of the State of Louisiana, do hereby certify that

## *PATTY ANN TRANTHAM, ESQ., #30972*

was duly admitted and licensed to practice as an attorney and counselor at law in this Court and the several courts of the State of Louisiana, on the 26th Day of April, 2007 A.D.; and is currently in good standing, and sufficiently qualified to perform the duties of an attorney and counselor at law.

IN WITNESS WHEREOF, I hereunto sign my name and affix the seal of this Court, at the City of New Orleans, this the 13th Day of April, 2011, A.D.

Clerk of Court
Supreme Court of Louisiana

# The Supreme Court of Texas

AUSTIN

CLERK'S OFFICE

    **I, BLAKE HAWTHORNE,** Clerk of the Supreme Court of Texas, certify that the records of this office show that

### Patty Ann Faulkenberry Trantham

was duly admitted and licensed as an attorney and counselor at law by the Supreme Court of Texas on the 1st day of May, 2009.

    I further certify that the records of this office show that, as of this date

### Patty Ann Faulkenberry Trantham

is presently enrolled with the State Bar of Texas as an active member in good standing.

                 **IN TESTIMONY WHEREOF** witness my hand and the seal of the Supreme Court of Texas at the City of Austin, this, the 11th day of April, 2011.
BLAKE HAWTHORNE, Clerk

by *Brad Sonego*

Brad Sonego, Deputy Clerk

No. 0411T

This certification expires thirty days from this date, unless sooner revoked or rendered invalid by operation of rule or law.



1       **Maricopa Superior Court**

2  Beatrice Mills,                          )
        Plaintiff                           )
3                                           )              CASE # CV2011-000415
                     v.                     )
4                                           )              SBA App #1006140
   Bristol-Myers Squibb et al,             )
5       Defendant.                          )        **NOTICE OF RECEIPT OF COMPLETE**
                                            )                    **APPLICATION**

6
   NOTICE IS HEREBY given by THE STATE BAR OF ARIZONA that it has <u>received the verified</u>
7  <u>application and fee from Patty Trantham.</u>

8  In addition to this application, applicant has made the following applications to appear pro hac vice,
   pursuant to Rule38 (a), within the previous three (3) years:
9
        Title of Matter          Court/Agency              Date        Granted?
10

11
   Exhibit A, the original verified application and Exhibit B, the original Certificate(s) of Good Standing
12 are attached hereto.

13 DATED this 6st day of May 2011

14

15                                          Fabiola Perez
                                            Resource Center
16                                          State Bar of Arizona

17

18 Original Mailed on this 6st day of May 2011 to:

19 Jeffrey Boyd Miller
   Roush McCracken Guerrero Miller & Ortega
20 1112 E Washington St
   Phoenix, AZ 85034-1010
21

22

23

24

25